Eaton *v.* European and North American Railway Company.

————◆————

CHARLES H. EATON and others *vs.* EUROPEAN & NORTH AMERICAN RAILWAY COMPANY.

*Respondeat superior.   Location of railroad—filing of.   R. S. of 1857, c. 51, § 25 —construction of.   Charter—renewal of.   Damages.*

A railroad corporation engaged a contractor to construct "under the general supervision of the chief engineer of the company" a specific portion of its railroad, located across the plaintiffs' timber tract; and the sub-contractor and his employees cut a tote road through the plaintiffs' premises, outside of the location, and set fires which, through their negligence, spread and burnt the plaintiffs' timber. *Held,* that the company, not having directed the acts complained of, and having no such control over the persons who committed them as to direct or remove them, was not liable for the damages occasioned thereby.

If the company's engineer direct the sub-contractor to do an unauthorized act, such as grading outside of the limits of the true location, the company is liable therefor.

A railroad corporation is not liable under R. S. of 1857, c. 51, § 25 (R. S. § 22) for trespasses and injuries to lands and buildings adjoining, or in the vicinity of its road committed by contractors or the servants of contractors.

Where the charter authorized the taking of land "not to exceed six rods in width," and by an act of the legislature the time for completion was extended two years, and "all rights, privileges, and grants theretofore appertaining to said company" were thereby continued, *Held,* that the charter was thereby renewed in its entirety, and the company retained the right to take land six rods in width, although the general statute allowed but four.

Where the time for filing the location with the county commissioners was fixed by a statute to be on February 8th, a depositing of it at their office, with their clerk, on February 6th is seasonable, although a term of the commissioners' court did not occur until the following April.

Eaton v. European and North American Railway Company.

So where by an act of the legislature, approved Jan. 17, 1869, "one year from and after the approval" was given to alter and amend the location between certain termini, and the amended location was adopted on Jan. 15, 1870, and received and filed by their clerk in the county commissioners' office, on Jan. 17, 1870, the filing was seasonable, although there was no session of the commissioners' court until the following April.

Where a railroad corporation had seasonably filed a petition in the nature of an appeal, on the question of damages, which was dismissed at the October term, 1870, and the plaintiffs applied to the county commissioners for the security required by R. S. of 1857, c. 51, § 51 (R. S. § 6), for the payment of damages awarded, and the corporation gave no security, but in December following paid the amount of damages awarded and costs. *Held*, that in the absence of evidence to the contrary, this may well be presumed to be in satisfaction of the damages awarded by the commissioners for the land taken to which the assessment refers.

*Veazie* v. *Penob. R. R. Co.*, 49 Maine, 119, examined and modified.

ON REPORT.

TRESPASS to recover damages for breaking and entering township number ten, range three, in this county, owned by the plaintiffs and others, across which the defendants' railroad was located.

There was also a count in case for kindling fires on the township, and negligently permitting them to spread and burn and destroy the plaintiffs' timber.

Also a count under R. S. of 1857, c. 51, § 25.

Plea, general issue, with brief statement alleging that whatever acts were done on said township, by the defendants, or their servants, agents, or employees, were rightfully done under the authority given by the laws of the State and their charter, in locating and building their road.

There was evidence tending to show that the sub-contractors and their employees cut and appropriated timber, on township number ten, for building hovels and camps, without the consent of the plaintiffs; and that a part of the road was graded and built outside of the location.

There was also evidence tending to show that it was usual in May and June to have mosquito smokes in the woods, for the purpose of driving away mosquitoes and black flies; that the laborers cannot sleep without such smokes; that Riley & Bunston and

their employees built such fires on township ten, through those months, without any direction from the defendants, and through the negligence of those setting them, the fires spread and burnt over three thousand acres of the plaintiffs' township ; that the railroad was cut out six rods in width ; and that a tote road was cut through several miles of township ten, by the employees of Brooks & Ryan, and by their direction, but not by the direction of the railroad company.

It was admitted that there was a piece of new location or cutting under the amended location, for which no damages had been assessed or paid, and an offer to pay the same was made.

It appeared that the plaintiffs caused to be served on the defendants an order of the county commissioners for this county, issued on application of the plaintiffs, for the security required by R. S. of 1857, c. 51, and served on the defendants Feb, 8, 1870, and no security was given, and the requirement not waived unless the acceptance of the damages paid by the company has that effect in law.

On the original location were two endorsements ; the former signed by the clerk of the county commissioners, and the latter by the commissioners themselves, and dated respectively, as follows :
" Clerk's office, Court of County Commissioners.   Received February 6, 1868.
              " Court of County Commissioners, April term, 1868.

The within report of location is hereby approved, and ordered to be filed and recorded."

On the amended location were three indorsements : one of the adoption of the location by the directors, dated January 15, 1870 ; another by the clerk of the county commissioners, that the location was " received and filed January 17, 1870 ; " and the third by the county commissioners, dated " April term, 1870," approving and ordering it to be filed and recorded.

The remaining facts appear in the opinion.   If the action was maintainable, it was to stand for trial.

*J. & G. F. Granger* and *Madigan & Donworth*, for the plaintiffs.

The defendant corporation, in constructing its railroad, was fulfilling a public trust, as well as executing a private enterprise, and the corporation is liable for all the acts of the persons employed in the work carried on under the power and authority of its charter, however remotely connected with the corporation; for public policy as well as the law forbade the shifting of the responsibility upon irresponsible persons. *Stone* v. *Codman*, 15 Pick. 297; *Lowell* v. *Boston & Lowell Railroad*, 23 Pick. 24; *Bush* v. *Steinman*, 1 B. & P. 404.

The following cases are cited and commented upon by Thomas, J., in *Hilliard* v. *Richardson*, 3 Gray, 349; *Sly* v. *Edgerly*, 6 Esp. 6.

Counsel also cited *Bailey* v. *Mayor*, *&c.*, *of New York*, 3 Hill, 531; *Ellis* v. *Sheffield Gas Consuming Co.*, 2 El. & Bl. 767; *Bangor* v. *Oldtown & Milford R. R. Co.*, 47 Maine, 35.

The defendants were guilty of trespass in cutting their track six rods in width. Although the right to take six rods was given in original charter, it was withdrawn when they applied for extension in 1864 (c. 321, § 6) providing that the corporation shall be at all times subject to such general laws in relation to railroads as have been or may be hereafter enacted by the legislature.

The cutting out and using a tote road was a tresspass. *Sabin* v. *Vt. Central R. R. Co.*, 25 Vt. 363.

The defendants have a right to enter upon the plaintiffs' land to make surveys, but nothing further until the damages were paid or secured. R. S. of 1857, c. 51, § 5; 1 Redfield on Railways, 242; *Hazen* v. *B. & M. Railway*, 2 Gray, 574; *Stone* v. *Cambridge*, 7 Cush. 270.

Railroad corporations are held with greater strictness for the acts of their agents and employees than private individuals. *Hilliard* v. *Richardson*, 3 Gray, 382; *Veazie* v. *Penob. R. R. Co.*, 49 Maine, 122, 123, 124.

The defendants are liable for the fires occasioned by the negli-

gence and want of care of their employees, and the servants and
hired men of their employees. *Bailey* v. *Mayor, &c., of New York,
supra*; *Ellis* v. *Sheffield Gas Consumers' Co., supra;* 1 Redfield
on Railways, 369.

The great object of an incorporation is to bestow the character
and properties of individuality on a collected and changing body of
men.    Any privileges which may exempt it from the burdens com-
mon  to  individuals,  do  not  flow  necessarily from the charter, but
must  be  expressed  in  it,  or  they do not exist.    *Chapman* v. *New
York  Central R. R. Co.,* 33 N. Y. 369; 1 Redfield on Railways,
383 ; *Standish* v. *Mayor of Liverpool,* 15 Eng. L. & Eq. 255.

The defendants' road  was  not  located  in accordance with the
first location filed.    The  second location was not filed with the
county commissioners in season, and was void.    *Hinks* v. *Hinks,* 46
Maine, 423; *Fuller* v. *Walker,* 46 Maine, 280; *Davis* v. *Russell,*
47  Maine,  343;  *Charles  River  Branch  R. R. Co.* v. *County Com-
missioners of Norfolk,* 7 Gray, 390.

In *Cushman* v. *Smith,* 34 Maine, 247, an action of trespass was
maintained for continuing a railroad track across defendants' land,
built without making compensation for the land damages.    Shepley,
J., says in the opinion : " An action of trespass *quare clausum* may
be  maintained  to  recover  damages  for  the  continuance  of  such
occupation (of the land taken for the road), unless compensation
or a tender of it be made within a reasonable time after the com-
mencement of it."

This case was decided in 1852.    The next session of the legisla-
ture  passed  the  act  prohibiting  railroad companies from entering
on the land of others for any other purpose than to make surveys,
until compensation was made  or tendered  for the land damages.
The legislature thought the power a dangerous one and liable to
great abuse, which the court, in *Cushman* v. *Smith,* held that they
could exercise before compensation was paid or secured.

Receipt of damages inadmissible, as they are subsequent to com-
mencement of this action.

The  corporation  is  also  liable  for  the  trespass  under  R. S. of
1857, c. 51, § 25.    And also under c. 26, § 21.

The party setting the fire is accountable for negligence and want of reasonable care. Time and manner must be prudent,—immaterial whether proof shows gross negligence or want of ordinary care on the part of the defendant. *Henry* v. *Nourse*, 54 Maine, 256, and cases there cited. See also, *Pratt* v. *Atlantic & St. Lawrence R. R. Co.*, 42 Maine, 579.

The great maxim, "*sic utere tuo ut alienam non laedas*," adopted by this court in citation from *Shaw* v. *Worcester R. R.*, 8 Gray, 66, applies to corporations as well as to individuals.

*J. W. Emery & C. P. Stetson*, for the defendants.

APPLETON, C. J.  In 1850, the defendant corporation obtained a charter to build a railroad from Bangor to Mattawamkeag, and thence to the boundary line of New Brunswick. The charter expired several times, but was revived from time to time, and, ultimately, Dec. 31, 1872, was fixed for the final completion of the road.

On 7th August, 1865, the defendant corporation entered into a contract with Pierce & Blaisdell for the construction of a railroad from Bangor to St. John, in New Brunswick. It was specified therein that the work should "be constructed under the general supervision and direction of the chief engineer of said company, as required by the contract and specification;" and that the railroad was "to be built on the line as located, or to be located, and marked out by the engineers of the company."

This contract, by the consent of the defendant, was assigned by Pierce & Blaisdell to the International Railway Construction and Transportation Company. On 24th May, 1869, this company contracted with Brooks & Ryan, "to construct, build, complete, and finish in a good, substantial, and workmanlike manner, under the superintendence of the chief engineer of the E. & N. A. R. Co., for the time being," all the work within certain limits defined in said contract, at a certain sum per mile. Brooks & Ryan were to make good any damages to the adjoining lands caused by blasting and removing fences, etc.

On Nov. 1st, 1869, Brooks & Ryan contracted with Riley & Bunston for all the grading, etc., of the portion of the railway between stations No. 650 and No. 746, the work to be done in accordance with the contract of May 24, 1869, between said International Railway Construction and Transportation Company and said Brooks & Ryan. There was likewise a similar contract between Brooks & Ryan and Wiseman for the grading between stations No. 800 and No. 854.

The acts of which complaint is made and for which damages are sought to be recovered are those of Riley & Bunston and of Wiseman, or of those in their employ. The relation of master and servant did not exist between them and the defendants. They were not under the direction and control of the defendants. They were not employed and could not be dismissed by the defendants. They were sub-contractors or the servants of sub-contractors. The sub-contractors were responsible to those with whom they had contracted, and their servants to those in whose service they were laboring.

When the contract is to do an act in itself lawful, it is presumed it is to be done in a lawful manner. Unless, therefore, the relation of master and servant exists, the party contracting is not responsible for the negligent or tortious acts of the person with whom the contract is made, especially if those acts are outside of the contract. If the injury was the natural result of work contracted to be done, and it could not be accomplished without causing the injury, the person contracting for doing it would be held responsible. *Butler* v. *Hunter*, 7 H. & N. 826. In *Reedie* v. *The London & N. W. R. Co.*, 4 Exch. 244, a company empowered by act of parliament to construct a railway, contracted under seal with certain persons to make a portion of the line, and by the contract reserved to themselves the power of dismissing any of the contractors or workmen for incompetence. The workmen, in constructing a bridge over a public highway, negligently caused the death of a person passing beneath the bridge, by allowing a stone to fall upon him. It was held, in a suit by the administratrix, that the company was not liable. In

*Overton* v. *Freeman*, 73 E. C. L. 866, A. contracted with parish officers to pave a certain district, and entered into a sub-contract with B. under which the latter was to do the paving of the street, the materials being supplied by A. and brought to the spot in carts. Preparatory to paving, the stones were laid by laborers, in the employ of B., on the pathway, and there left unguarded during the night, so as to obstruct the same. The plaintiff fell over them and was injured. It was held that B. was responsible for the negligence and not A. "I think," says Maule, J., "the present case falls within the principle of those authorities which have decided that the sub-contractor, and not the person with whom he contracts, is liable civilly, as well as criminally, for any wrong done by himself or his servants in the execution of the work contracted for." In *Peachey* v. *Rowland*, 76 E. C. L. 181, the defendants contracted with certain individuals to construct a drain in a public highway, who employed one C. to fill in the earth over the brick work, and to carry away the surplus. C. left the earth so much raised above the level of the road, that the plaintiff, driving by in the dark, was thereby upset and injured. It was held that the defendants were not responsible for the negligence of C. The defendants employed somebody to do what might be done in a proper and safe manner. It was done negligently and improperly and the plaintiff was injured, but it was not thus done by the defendants nor at their instance, and they were not held responsible. So in the case at bar, the negligent or tortious acts of the sub-contractors or of their servants were not the acts of the defendant, and if not their acts nor done by their procurement, the sub-contractors, or the servants committing them alone, are liable.

In conformity with these views are the decisions in this country. In *Blake* v. *Ferris*, 1 Selden, 48, it was held that the defendants who had a license from the city of New York, to construct at their own expense a sewer in a public street, and who had engaged another person to do it by contract, to construct it at a stipulated price for the whole work, were not liable to third persons for any injury resulting from the negligent manner in which the sewer was

left at night by the workmen engaged in its construction. The doctrine there held was that the immediate employer of the servant, whose negligence occasions the injury, is alone responsible for the negligence of such servant. These views were affirmed in *Park* v. *Mayor*, *&c.*, *of New York*, 4 Selden, 222. In *Kelley* v. *Mayor*, *&c.*, *of New York*, 1 Kernan, 432, the corporation of the City of New York had ordered a street to be graded, and contracted with a person to do the grading. It was held that they were not liable for damages occasioned by the negligence of the person who had contracted to do this work, or of the laborers in his employ. In *Clark* v. *Vermont & Canada R. R. Co.*, 28 Vt. 103, and in *Pawlet* v. *The Rutland & Washington R. R. Co.*, 28 Vt. 297, it was held that the defendants were not liable for the negligent or tortious acts of the servants of those who had contracted to do certain work for these corporations; that no privity existed between such servants and the corporations. " Though it may be assumed in the case before us," remarks Bennet, J., in the last-named case, " that a public nuisance had been committed by the servants of the sub-contractor, and a particular injury has resulted therefrom to Phelps, and for which the town (of Pawlet) had been compelled to make satisfaction, yet we cannot discover any privity existing between the defendants and the employees of the sub-contractor. The contract made for the building of the abutments to the bridge was for a lawful purpose, and in no way involved the commission of a wrong, and the employees of the sub-contractor were not the servants of the defendants nor under their control." · In *Cuff* v. *The Newark & New York Railroad Company*, 9 American Law Register, 540, the question under discussion was very carefully considered and examined by the supreme court of New Jersey, and with like conclusions. " The rule is now firmly established," remarked Depue, J., " that when the owner of lands undertakes to do a work, which in the ordinary mode of doing it is a nuisance, he is liable for any injuries which may result from it to third persons, though the work is done by a contractor exercising an independent employment and employing his own servants. But

when the work is not in itself a nuisance, and the injury results from the negligence of such contractor or his servants in the execution of it, the contractor alone is liable, unless the owner is in default in employing an improper and unskillful person as the contractor."

In *Callahan* v. *Burlington & Missouri River R. R. Co.*, 23 Iowa, 562, the plaintiff sought to recover compensation for damage done to his timber, and by a fire negligently set by the employee of a sub-contractor with the defendant corporation, for the purpose of clearing the way of trees, logs, brush, and rubbish. The contract provided that the way should be cleared of all trees, etc., by removal or burning, as the engineer should direct, before the grading should be commenced. The engineer ordered the burning, which, by the negligence of the person who set the fire, escaped in the plaintiff's land doing there much injury, and the question presented was whether the railroad corporation was responsible for the negligence of a servant of a sub-contractor. In delivering the opinion of the court, Beck, J., says, " If the person sought to be charged under the rule as employer did not contract with the party committing the wrongful act for his labor or services, and is not directly liable to him for compensation for such labor or services, and has no such control over him as will enable the employee to direct the manner of performing the labor or services, he is not liable for the wrongful act of the agent or servant. In order to create the liability, it is especially necessary that the control of the employee over the servant should be of such a character as to enable him to direct the manner of performing the services, and to prescribe what particular acts shall be done in order to accomplish the acts intended."

The same views have received the sanction of the highest judicial tribunals in Ireland. In *Gilbert* v. *Halpin*, 3 Irish Jurist, N. S. 300, the plaintiff, as owner of the schooner Paddy, brought an action against the defendant as secretary to the commissioners empowered to improve the harbor of Wicklaw, to recover damages for its loss by reason of the negligence of commissioners, who had caused

to be placed certain piles, etc., and neglected to place, or caused to be placed, any light, or to use any other reasonable precaution to guard vessels from being driven thereon.

The defendants pleaded, among other pleas, that they committed the execution of the work to their contractor, John Killien, and that at the time, etc., the said piles were still in the possession and under the control of the said Killien.

Green, B., in delivering his opinion, says, " I think the case falls within the rule that the contractor, and not the employee, ought to be liable."

" There is a plain difference," remarks Richards, B., " between the case of master and servant, and that of employee and contractor. The employee was authorized to perform the work, and he authorized the contractor. No man would drive down piles in a navigable river, without being authorized. Therefore, I think it was the contractor's duty to have apprised his employer that this work had come to such a stage, that it was necessary to get lights to prevent accidents. It was not to be expected that the commissioners would be on the ground on all occasions to see what might be required to guard against danger. The contractor failed in performing his duty, and I think he ought to be liable." " The question," says Pennefather, B., " is who is liable. If the contractor, the commissioners are not liable, for it is clear from all the cases, that if the contractor is liable, the employee is not. It appears to me, that if it was the duty of the contractor to put these lights, his employees were not bound." " The principle of law is clear," remarks Pigot, C. B., " that when a person is engagedby contract to do a certain work, the contract or and not the employee is liable for this."

Such, too, is held to be the law in Scotland. In *McLean v. Russell, McNee & Co.*, 9th March, 1850, 22 Jur. 394, it was decided that when a person contracts with one man to do a piece of work, and the latter sub-contracts with another, the sub-contractor alone is liable for any damage committed in the course of the work by him." This view of the law was again sustained

by the same court in *Shield* v. *Edinburgh & Glasgow Railway Co.*, 28 Jurist, 539.

The plaintiff, in support of this suit, relies upon the case of *Bush* v. *Steinman*, 1 B. & P., 400. the case was this : A. having a house by the roadside, contracted with B. to repair for a stipulated sum ; B. contracted with C. to do the work ; C. with D. to furnish the materials ; the servant of D. brought a quantity of lime to the house, and placed in the road, by which the plaintiff's carriage was overturned. Held, that A. was answerable for the damage sustained. Without particularly examining the reasoning of the court, it is sufficient to say that it has been long since overruled in England and in this country, as will abundantly appear by the cases cited. It is true, the case is cited with approbation in *Lowell* v. *Boston & Maine Railroad*, 23 Pick. 24, but subsequently, upon an elaborate and careful review of the authorities, it was overruled in *Hilliard* v. *Richardson*, 3 Gray, 349. It can no longer be deemed an authority on the other side of the Atlantic.

The next case cited in support of this claim is *Lowell* v. *B. & M. R. R.* 23 Pick. 24, but so far as that rests upon *Bush* v. *Steinman*, as has been already seen, it has been overruled. " The accident " in that case, observes Thomas, J., in *Hilliard* v. *Richardson* " occurred from the negligence of a servant of the railroad corporation, acting under their express orders. The case, then, of *Lowell* v. *Boston & Lowell Railroad*, stands perfectly well upon its own principles, and is clearly distinguishable from the case at bar. The court might well say, that the fact of Noonan being a contractor for this section, did not relieve the corporation from the duties or responsibility imposed on them by their charter and the law, especially as the failure to replace the barriers was the act of their immediate servant, acting under their orders." The defendants in the present case, would be liable for any and all wrongful acts done by their " immediate servant, acting under their orders." They should not be held responsible for the torts of a contractor engaged to do a specified work, lawful in itself, which might be performed without interfering with rights of others, nor for the torts

of his servants, whom they never employed, over whom they had no control, and whom they could not discharge.

In *Wyman* v. *Penobscot & Kennebec R. R. Co.*, 46 Maine, 162, the train, by which the injury was caused, was "run under the direction of the company, and under their control," and it was consequenty held liable. In *Veazie* v. *Penobscot R. R.*, 49 Maine, 119, the plaintiff town sought to recover of the defendant corporation, the amount it had been compelled to pay in consequence of a defect in an highway occasioned by their neglect. The injury, it is stated in *Phillips* v. *Veazie*, 40 Maine, 98, was occasioned " by the acts of the Penobscot railroad Co., in constructing their road over that of the defendants." The decision in *Veazie* v. *Penobscot Railroad Co.*, is placed on the ground that the work causing the injury was done " according to the plans and directions of the chief engineer of said company." It is undoubtedly true, that when the contractor is to follow the directions of an engineer of the contracting corporation, and he is directed by such engineer to do an unauthorized and illegal act, the corporation, thus acting by its agent, would be held liable. But if the engineer gives no such directions, and the tortious acts of the contractor or of his servants are of his or their mere motion, and without such direction or authority, it is difficult to perceive why a railroad corporation in such case should be held any more liable for such torts of a contractor, than an individual, or a city, or any corporation. If the contract is a legal one, the acts contracted to be done are legal, the wrongful acts of the contractor are his own, and not those of the party with whom the contract is made. It is different when the relation of master and servant exists.

The case, therefore, of *Veazie* v. *Penobscot Rail Road Co.*, is in accordance with all the authorities if these wrongful or negligent acts were done by the specific direction of their engineer.

The other ground upon which the decision is placed, that "the company must be responsible, whatever contracts they may make " for the torts of those with whom they contract, can hardly be sustained to such an extent. The authorities already cited abund-

antly show that for the neglects and torts of contractors or their servants, railroad corporations are not to be governed by other or different rules than those applicable to other corporations or to individuals.

The fact that it is specified in the original contract with Pierce & Blaisdell that " the work shall be constructed under the general supervision of the chief engineer of said company, as required by this contract and specifications " does not necessarily render the defendant corporation liable for whatever the contractor or their servants may wrongfully do. The corporation is not to be held for an illegal act not contracted to be done, nor directed by their engineer, and in no way sanctioned by corporate action. In *Steele* v. *The South Eastern Railway Co.*, 81 E. C. L. 550, the work was to be done by the contractor according to plans prepared by and under the superintendence of the company's surveyor, yet the railway company was held not responsible for an injury resulting to a third person, from the negligent manner in which the work was done by such contractor. It was not caused by the company or by any servant in their employ. In *Kelley* v. *Mayor, &c., of New York*, 1 Kernan, 435, the work was to be done " under the direction and to the entire satisfaction of the commissioner of repairs and supplies, and the surveyor having charge of the work," yet the city was held not responsible for damages caused by the negligences of workmen in the employ of the city. " The clause in question," observes Selden, J., " clearly gave the corporation no power to control the contractor in the choice of his servant. That he might make his own selection will not be denied. The right of selection lies at the foundation of the responsibility of a master or principal for the acts of his servant or agent." To the same effect was the cases of *Park* v. *Mayor, &c., of New York*, 4 Selden, 222 ; *Cuff* v. *N. & N. Y. R. R. Co.*, 9 Am. Law Register, 541. In *Hobbett* v. *The London & N. W. Railway, Co.*, 4 Exch. 253, the company by their contract reserved to themselves the power of dismissing any of the contractor's workmen for incompetence. " Our attention " observes Rolfe, B., " was directed, during the argument, to the pro-

visions of the contract, whereby the defendants had the power of insisting on the removal of careless or incompetent workmen, and so it was contended they must be responsible for their non-removal. But the power of removal does not seem to vary the case. The workman is still the servant of the contractor only, and the fact that the defendant might have insisted on his removal if they thought him careless or unskillful, did not make him their servant."

Though a person employing a contractor is not responsible for the negligence or misconduct of the contractor or his servants in executing the act, yet if the act is wrongful, the employer is responsible for the wrong so done by the contractor or his servants, and is liable to third persons for damages sustained by such wrongdoing. *Ellis* v. *Sheffield Gas Consumer Co.*, 75 E. C. L. 767. So if, in the present case, the contract was to do a wrongful act, the defendants must be held liable for damages occasioned thereby. Or, if the defendants' engineer directed the contractors to do what was illegal and unauthorized, as by working outside of the limits of the true location, the defendants must be held liable for any trespasses thus committed.

By R. S. 1857, c. 51, § 23, " Legal and sufficient fences are to be made on each side of land taken for a railroad, when it passes through inclosed or improved land or wood-lots belonging to a farm before the construction of the road is commenced, and they are to be maintained and kept in repair by the corporation. For any neglect of it during the construction of the road, and for injuries thereby occasioned by its servants, agents, or contractors, the directors are, jointly and severally, personally liable."

By § 25, " The corporation is liable for trespasses and injuries to lands and buildings adjoining, or in the vicinity of its road, committed by a person in its employ, or occasioned by its order, when the party injured has within sixty days thereafter given notice of it to the corporation; but its liability does not extend to acts of willful and malicious trespass.

An individual in the employ of the company is not a person con-

tracting with the company to do and perform a certain contract. The difference between the contractor and servant, or employee of the company, is recognized by the statute. The provisions of § 25, apply only to those in the employ of the corporation, or those acting under its orders.

The provisions of § 23, embrace contractors. As contractors are included in one section, and omitted in the other, we must deem it to have been for some purpose,—and that when they are omitted, it was not the intention of the legislature that they should be included.

We think, therefore, that the corporation is not to be held responsible under this section for the torts of contractors or the servants of contractors.

The defendants obtained their charter in 1850. By the general railroad law, then in force, a railroad corporation was authorized to take and hold real estate necessary for the location, construction, and convenient use of its road . . . not to exceed four rods in width, unless necessary for excavation, embankment, or to procure materials." R. S. 1841, c. 81, § 2. But the defendants, by their charter, Pub. Laws of 1852, c. 378, § 1, were authorized to take land not "to exceed six rods in width." The defendants' charter was extended by an act approved Feb. 20, 1856, and again by an act approved March 25, 1863, and by an act approved Feb. 21, 1866, a further extension of two years "in addition to the time now limited by law" was allowed for the completion of the defendants' railway, and "all rights, privileges, and grants, heretofore appertaining to said company, are hereby continued for the extended times aforesaid."

By the charter, as granted originally, six rods might be taken for the railroad. The charter was renewed from time to time. No restrictions were made upon its width, and there is no intimation that any of the rights and privileges granted were modified or withdrawn. On the contrary, the charter is renewed, as granted, in its entirety. The corporation, with a right to six rods in width, is to be subject to the general laws of the State in relation to railroads.

The first location was filed in the office of the clerk of the court of commissioners of Washington county, on 6th February, 1868. This was within the extended time given by statute.

By the act approved Jan. 17, 1869, c. 106, one year from and after the approval is given to alter and amend the location between Lincoln and the eastern boundary of the State. The amended location was adopted by the direction of the defendant corporation, Jan. 15, 1870, and "received and filed" in the office of the county commissioners of Washington county on 17th January, 1870. This was within the time allowed by the State.

The next term of the county commissioners after the location was filed, was held on the first Wednesday next after the fourth Tuesday of April, 1870, at which time the amended location was approved and ordered to be recorded.

Both the original and the amended location were completed within the time allowed by the statutes, extending the time in which the location might be made. The defendants were entitled to the whole of the extended time. Their locations were made and filed within that time. The acts granting extensions of time, do not require that any action should be had by the county commissioners within the extended time. Their action was necessarily to be after that had expired. It was had as soon as by the law of the State it could be had,—that is, at the next regular session after the expiration of the time as extended.

By R. S. 1857, c. 51, § 3, "the railroad is to be located within the time, and, substantially, according to its description in the charter. Its location is to be filed with the county commissioners, approved by them, and recorded." The statute, it will be perceived, has been followed. The time for the location is not to be reduced. The defendants located and filed their location within the time granted them, and are, therefore, entitled to the rights thereby acquired.

It appears in evidence that the plaintiffs made an application for an assessment of damages, and that an hearing was had, and damages assessed at thirteen hundred dollars; that the defendants sea-

Eaton v. European and North American Railway Company.

sonably filed a petition in the nature of an appeal, which, at the October term, 1870, of this court, was dismissed; that after the defendants filed their petition, the plaintiffs applied to the county commissioners to obtain the security required to be given by R. S. 1857, c. 51, for the payment of the damages awarded them; that the defendants did not give any security, but on 21st December, 1870, paid them the amount of damages awarded by the commissioners, and the costs. In the absence of any evidence to the contrary, this may well be presumed to be in satisfaction of the damages awarded by the commissioners for the land taken by the location, to which the assessment of the county commissioners refers.

The plaintiffs are entitled to their legal rights. The opinion ion or remarks of Thompson, in his conversation with Eaton, cannot enlarge those rights.

But it appears that the railroad passes over land of the plaintiffs not included in the original or amended location. For this, no justification is made out. If the defendant corporation, disregarding the locations, have built their railroad upon the plaintiffs' land, they are trespassers in so doing, whether the act was done by the order of their chief engineer, under whose supervision the work was constructed, by their express direction, or they have subsequently ratified it. If the trespass has been settled,—it will be for the defendants to show it. *The case to stand for trial.*

CUTTING, WALTON, DICKERSON, and DANFORTH, JJ., concurred.