MILDRED M. BLAISDELL

*vs.*

HENRY DAIGLE

Kennebec.   Opinion, March 30, 1959.

*McLean, Southard & Hunt,* for plaintiff.

*Jerome G. Daviau,*
*Donald J. Bourassa,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ. SIDDALL, J., did not sit.

WEBBER, J. On motion and exceptions. This was an action for trespass for the wrongful cutting of trees on the plaintiff's woodlot. Several points of law have been disposed of by waiver, stipulation or non-argument in the briefs before us. Only one issue remains to be considered here. The defendant admits an unintentional and innocent trespass. The jury, however, awarded double damages and answered in the affirmative as part of their verdict the specific question, "Was the cutting down of plaintiff's trees committed willfully or knowingly?" Our inquiry is now as to whether or not there was evidence to support this finding of the jury.

We look first to the statute which appears as R. S., 1954, Chap. 124, Sec. 9. After providing a remedy for trespass in such circumstances as these, the statute provides: "If said acts are committed willfully or knowingly, the defendant is liable to the owner in double damages." The use of the word "or" suggests at once that willfulness without actual knowledge of wrong doing will suffice to justify the imposition of double damages. We think therefore that it follows logically and almost automatically that the word "willfully" as used in this statute is intended to embrace conduct on the part of the defendant which displays an utter and complete indifference to and disregard for the rights of others. One should not be permitted to hide behind his lack of knowledge if he has meticulously avoided every means of acquainting himself with the truth. The statute impliedly recognizes that lack of knowledge is easily professed and with difficulty disproved. It offers small comfort to him who recklessly perseveres in keeping intact his ignorance of the facts.

What of the evidence of willful misconduct as thus defined? The Silver Spur Riding Club, Inc., owner of the land abutting the plaintiff on the north, sold its stumpage by written contract to one Beaulieu for $300. About a month

later Beaulieu in turn assigned his interest in the contract (by writing on the reverse side thereof) to one Voisine. Eight days later Voisine assigned his interest (again on the reverse side of the original contract) to the defendant. The last transaction took place in a lawyer's office. The jury has found on the basis of evidence that the defendant subsequently cut trees owned by the plaintiff which were fairly worth $900 (the verdict for double damages being $1800). The jury could properly consider that the defendant should have ascertained that his assigned contract showed on its face a purchase price of $300. The great discrepancy between the contract price and the value of the trees seemingly available for cutting should itself have been a danger signal. The defendant says he could not read English and never knew the contents of the contract he purchased. He never asked the parties or the attorney to read or explain it. He never asked either the plaintiff or any officer of the Riding Club to show him the line. He did not have the line run out. He made no examination or inquiry as to what metes and bounds might be shown by any deed of the property. He consulted a neighbor only after the cutting was complete and then, as he says, for the first time discovered his error. The jury could infer that he must have seen and therefore must have ignored a noticeable difference between the growth on the north and that on the south side of the property line. Witnesses testified that the location of the line as evidenced by the larger and darker trees of the plaintiff was clearly visible from the road. The jury could properly take into account that if the defendant had taken even one of the steps above suggested he would have discovered the truth before any cutting occurred. The defendant pleads his ignorance of the true facts but the jury may well have concluded that his ignorance was self-imposed and reflected utter indifference to the rights of others. The defendant relied also on his claim that Voisine had shown him the wrong line. The jury may either have

disbelieved part or all of this testimony, or may have concluded that a simply inquiry by the defendant would have disclosed the fact that Voisine had no personal knowledge of the line. Voisine did not appear as a witness. There was evidence that after the trespass was discovered the defendant prevented the plaintiff from removing logs by blocking the only access to the highway with his truck. This action the defendant admits was intentional. The jury may properly have inferred that such conduct indicated a continuing intention to proceed without regard to the rights of others.

We did not hear or see the witnesses. We cannot say on this record that the jury did not have before them sufficient evidence to justify a finding that the defendant committed a willful trespass within the meaning of the quoted statute.

The entry will be

*Exceptions overruled.*
*Motion denied.*