**Mary Ann BONK, et al.**

v.

**Henry McPHERSON, et al.**

Supreme Judicial Court of Maine.

Argued Jan. 9, 1992.
Decided March 13, 1992.

Martin L. Wilk and Bernard J. Kubetz (orally), Eaton, Peabody, Bradford & Veague, P.A., Bangor, for plaintiffs.

Eugene C. Coughlin (orally), Vafiades, Brountas & Kominsky; Kevin Cuddy (orally), Cuddy & Lanham, Bangor; and Daniel Rush, Hodsdon & Rush, Kennebunk, for defendants.

* Chief Justice Vincent L. McKusick sat at oral argument and participated in the initial conference, but retired before this opinion was certified.

Before McKUSICK, C.J.,* and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Defendants Henry McPherson, McPherson Timberlands, Inc. (Timberlands), and Earl S. Robinson, Inc. (Robinson) appeal from a judgment entered against them in the Superior Court (Somerset County, *Chandler, J.*) after a jury verdict finding them liable in treble damages for trespass and the cutting and removal of timber from the property of plaintiffs Mary Ann Bonk and Frederick Camarra. 14 M.R.S.A. § 7552 (Supp.1991). We agree with Robinson that the evidence is insufficient to support the verdict that Robinson acted willfully or knowingly, and we agree with McPherson and Timberlands that the evidence is insufficient to hold them liable in any manner. Accordingly, we vacate the judgment and remand to the Superior Court for entry of a judgment of single damages against Robinson.

McPherson is trustee of the Grace Pond Realty Trust, which owns land in Upper Enchanted Township. Its lands are managed by Timberlands, a corporation owned by McPherson, which also holds title to land in the Township. The Trust created a subdivision involving 920 acres, consisting of lots forty to seventy acres in size, three of which were sold to Plaintiffs in April of 1988.[1]

In the fall of 1987, Timberlands entered into a harvesting agreement with Earl S. Robinson, Inc., a corporation owned by Earl S. Robinson, whereby Robinson would cut timber on land owned by Timberlands and deliver it to a lumber mill. The cutting areas were to be designated by Timberlands. Robinson began cutting timber in the fall of 1987 and continued into the winter of 1988. McPherson or Ken Lamond, Timberland's operations forester,

1. Grace Pond Realty Trust conveyed three deeds signed by McPherson in his capacity as trustee of the Trust. Lot 14 was conveyed to Mary Ann Bonk, lot 16 to Frederick Camarra, and lot 15 to Bonk and Camarra jointly.

would designate the areas to be cut, usually by referring to aerial photographs.

During the winter of 1988, before Plaintiffs purchased their lots, Lamond suggested to Earl Robinson that, for the purpose of moving equipment and people more easily to different cutting areas, Robinson could, at its own expense, and not as a part of the contract, clear a crossover road between the Two Mile Road and the Grace Pond Road. There was a discussion as to the location of the road to be cleared, but the extent and specificity of that discussion is disputed.[2] Robinson decided to go ahead and clear the crossover road in July 1988. Earl Robinson told Lamond that the road was going to be cleared and Lamond reminded him that it would be at Robinson's expense. There was no further discussion as to the location of the road. Lamond was aware of the phase lines of the subdivision and the sale of certain lots to the Plaintiffs, but did not blaze them or flag them because, based on his understanding from earlier discussions, he did not believe that the Robinson crew would be cutting near those lots. Robinson was aware of the existence of the subdivision but was not aware of the sale of individual lots to Plaintiffs.

Lamond understood that the crossover road would be cleared from Grace Pond Road, through 300 to 400 feet of Timberland property, to connect with an old existing road leading to Two Mile Road, about a quarter mile from Plaintiffs' lots. Robinson's crew, however, bulldozed from the Grace Pond Road over a different "old" road, an old winter road, that connected with Two Mile Road. This old winter road traversed Plaintiffs' lots. Bulldozing in this direction, Robinson's crew cleared a swath about 2000 feet across Plaintiffs' land. Earl Robinson testified that he felt confident before cutting that he knew where the road was supposed to go based on his earlier discussions with Lamond and his personal view of the site where he had seen "a continuance of an old road."

Plaintiffs filed a complaint alleging that all defendants were liable to them for cutting and carrying away timber and that the conduct was willful and knowing, entitling Plaintiffs to recover treble damages and attorney fees pursuant to 14 M.R.S.A. § 7552, together with punitive damages.[3] Following denial of defendants' motions for directed verdicts, the jury returned verdicts against all of the defendants, finding that Robinson was seventy-five percent at fault, and McPherson and Timberlands twenty-five percent at fault, and that all defendants had acted willfully or knowingly.[4] The jury determined Plaintiffs' damages to be $7000, and pursuant to 14 M.R.S.A. § 7552, damages were trebled to $21,000. In addition, Plaintiffs were awarded $17,306.48 in attorney fees, expenses, and costs. This appeal followed the denial of a post-verdict motion for judgment notwithstanding the verdict.

## LIABILITY OF DEFENDANT ROBINSON

Robinson concedes that it trespassed onto Plaintiffs' land and cut and carried away timber, and that it is liable under 14 M.R.S.A. § 7552 for single damages. Robinson contends, however, that the evidence does not support the jury's finding that it acted willfully or knowingly within the meaning of the statute, and therefore, it should not be liable for treble damages and attorney fees. We agree.

14 M.R.S.A. § 7552 provides in part:

> Whoever cuts down, destroys, injures or carries away any ... timber, wood, underwood, stones, gravel, ore, goods or property of any kind from land not that person's own, without license of the owner, or injures or throws down any fences,

---

2. Lamond testified that he pointed out where the crossover road could go both on the face of the earth and on an aerial photograph. Mr. Robinson testified that there was no reference to an aerial photograph in the discussions of possible sites for a crossover road.

3. The court ultimately dismissed the claim for punitive damages.

4. Defendants had objected to the court's definition of "knowing" in its instruction to the jury. See infra note 5.

bars or gates, or leaves such gates open, or breaks glass in any building is liable in damages to the owner in a civil action. If such act or such acts are committed willfully or knowingly, the defendant is liable to the owner in treble damages and, in addition, for the costs of any professional services necessary for the determination of damages, for the attorney's fees, and for court costs.

In order for an act to be committed "knowingly" within the meaning of section 7552, the defendant must be subjectively aware that the cutting is improperly taking place on another's land. *See Grant v. Warren Bros. Co.*, 405 A.2d 213, 218–19 (Me.1979); *see also Blaisdell v. Daigle*, 155 Me. 1, 2, 149 A.2d 904 (1959). Because there is no evidence in this case to suggest that Robinson or any of its employees had subjective knowledge that the timber cutting was occurring on Plaintiffs' property, the court erred in allowing the jury to consider whether the cutting was "knowing." [5]

■ "Willfully," as used in section 7552, although it requires a lesser degree of culpability than "knowingly," nevertheless is intended " 'to embrace conduct on the part of the defendant which displays an utter and complete indifference to and disregard for the rights of others.' " *Guilmet v. Galvin*, 597 A.2d 1348, 1349 (Me.1991) (quoting *Blaisdell*, 155 Me. at 2, 149 A.2d 904). Reviewing the evidence in a light most favorable to the Plaintiffs, as we must, *Schiavi v. Goodwin*, 542 A.2d 367, 368 (Me.1988), we conclude that Robinson's actions cannot be construed as being willful within the meaning of section 7552.

The evidence shows that the trees were cut and the road constructed in the wrong place because of a misunderstanding between Earl Robinson and Ken Lamond, not out of any indifference to or disregard for the rights of Plaintiffs. Although Robinson's crew did not have a map, plan, or

photo when it bulldozed the road, Earl Robinson and Lamond had discussed where the road should go and Earl Robinson testified that he felt confident that he knew where the road should go based on those discussions and his inspection of the area. There were in fact two different "old roads" that if extended would run between Grace Pond Road and Two Mile Road, and it is clear from the evidence that the parties were unaware at the time of their discussion that they were talking about different "old roads." It was not until after the cut was made that the misunderstanding came to light. Moreover, there were no boundary markers setting off Plaintiffs' lots from the rest of the rural wooded area that would have alerted Robinson's crew to a potential trespass.

This case differs from *Guilmet*, where we found no clear error in the finding by the trial court that the cutting by defendants of timber on Guilmet's property was willful within the meaning of section 7552. In that case, there was a cottage situated on Guilmet's property and existing boundary markers on Guilmet's land indicating the property line. Defendants made little effort to ascertain the correct location of those boundaries or their own boundaries before cutting. Here, the cutting took place in an uninhabited area in an unorganized Township and there were no markings to identify Plaintiffs' lots. Moreover, in *Guilmet* there was evidence of other conduct on the part of the defendants that evinced an utter and complete indifference to Guilmet's rights. *Id.* at 1350.

This case is also distinguishable from *Grant*, 405 A.2d at 216, and *Nyzio v. Vaillancourt*, 382 A.2d 856, 860 (Me.1978). The defendant in *Grant* was notified that there was a possible dispute as to whose property was being cut, but nonetheless continued in the removal of timber and

---

**5.** The court instructed the jury as to "knowingly" using, in part, an objective standard. The jury was instructed that if the defendant had sufficient knowledge that would lead a fair and prudent person, using ordinary caution, to make further inquiry, and if no inquiries were made, then the defendant would be charged with notice of any fact that, by ordinary dil-

igence, would have been ascertained by the inquiry. Because the subjective test must be applied to determine if a defendant's conduct is "knowing" within the meaning of 14 M.R.S.A. § 7552, the instruction was error. *Nyzio v. Vaillancourt*, 382 A.2d 856, 863 & n. 5 (Me.1978); *see also Grant v. Warren Bros. Co.*, 405 A.2d 213, 218–19 (Me.1979).

topsoil from the plaintiff's land. *Grant,* 405 A.2d at 216. In *Nyzio,* the defendant was aware of a protest of his actions. *Nyzio,* 382 A.2d at 860. Those circumstances are lacking here. In this case, the cutting on Plaintiffs' property resulted from a misunderstanding over the location of the old road that was to be connected to Two Mile Road. The mistake as to the location of that road did not amount to an utter and complete disregard of Plaintiffs' rights.

## LIABILITY OF DEFENDANTS McPHERSON AND TIMBERLANDS

McPherson and Timberlands also challenge the sufficiency of the evidence against them. Plaintiffs conceded at oral argument that there is insufficient evidence of conduct on the part of McPherson that would result in his personal liability. He did not direct Robinson's operation, nor did he authorize the trespass. Robinson's contract was with Timberlands. Although Timberlands did not directly commit the trespass, Plaintiffs contend that Timberlands' liability can be premised on its status as a principal responsible for Robinson's trespass and timber cutting as its agent,[6] or, alternatively, for directing or authorizing the trespass of Robinson. *See Eaton v. European & N. Am. Ry. Co.,* 59 Me. 520, 526 (1872).

Plaintiffs contend that because under the terms of the cutting contract with Robinson, Timberlands designated the areas for timber harvesting and because Lamond suggested that a crossover road could be cut, Timberlands exercised sufficient control over Robinson to warrant its being held liable for Robinson's trespass. We disagree.

The definitional sections of the *Restatement (Second) of Agency* (1958), provide as follows:

§ 1 Agency; Principal; Agent

(1) Agency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act.

(2) The one for whom action is to be taken is the principal.

(3) The one who is to act is the agent.

§ 2

. . . .

(2) A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent.

■■■■ Viewing the evidence most favorably to Plaintiffs, it is clear that Robinson was an independent contractor as opposed to an agent for whose actions Timberlands can be held liable. Robinson is a corporation separate and distinct from Timberlands. While an independent contractor can be considered an agent in some circumstances, if the contractor has "contracted to accomplish physical results not under the supervision of the one who has employed [it] to produce the results," then the contractor is a nonagent contractor. *Restatement (Second) of Agency* § 1401, comment b (1958). As a general rule, there is no vicarious liability upon the employer of an independent contractor. Prosser & Keeton, *The Law of Torts* § 71 at 509 (5th ed. 1984) (citing *Restatement (Second) of Torts* §§ 409–429 (1965)). "Since an agent who is not a servant is not subject to any rights of control by his employer over the details of his physical conduct, the responsibility ordinarily rests upon the agent alone, and the principal is not liable for the

---

6. As is the case with Robinson, Timberlands' conduct, through its employee Lamond, did not rise to the level of utter and complete disregard for the rights of Plaintiffs. Although Lamond may have been negligent, Plaintiffs did not sue Timberlands for negligence.

torts he may commit." Prosser & Keeton, *supra* § 70 at 508.

 In certain circumstances, a party can be held liable for the trespass of an otherwise independent contractor if the trespass was authorized as part of the contract, or was the natural result of the work contracted to be done, *see Eaton*, 59 Me. at 526, or the trespass was somehow directed or part of a common purpose, *see Chase v. Cochran*, 102 Me. 431, 437, 67 A. 320 (1907), or the trespass was ratified. In this case, Timberlands did not exercise control over Robinson in the construction of the road, nor did it authorize or ratify the trespass. Lamond pointed out where such a road could go and assumed that Robinson understood that the road would be cut on Timberlands' or the Trust's property. In cutting the road, Robinson was acting for its own benefit at its own expense. Timberlands neither directed nor authorized Robinson's trespass and, therefore, should not have been held liable.

The entry is:

Judgment vacated. Remanded to Superior Court for entry of judgment for defendants Henry McPherson and McPherson Timberlands, Inc., and for entry of judgment against defendant Earl S. Robinson, Inc., in the amount of $7000, plus interest and costs.

All concurring.