STATE OF MAINE   SUPERIOR COURT
CUMBERLAND, ss.  CIVIL ACTION
DOCKET NO: RE-07-187
RAC-CUM-2/7/2008

THEODORE CREAVEN and 2008 FEB -7 A 10: 19
PAMELA CRAVEN,

Plaintiffs,

v.

**ORDER ON PLAINTIFFS'**
**MOTION FOR SUMMARY**
**JUDGMENT**

DONALD L. GARBRECHT

WILLIAM K. MOGERG,
LINDA B. MOBERG,
TRUSTEES OF THE MOBERG FAMILY TRUST,

FEB 15 2008

Defendants.

This case comes before the Court on Plaintiffs Theodore Craven and

Pamela Craven's (Cravens) Motion for Summary Judgment pursuant to M.R.

Civ. P. 56.

## BACKGROUND

The dispute in this case concerns properties in Gray, Maine abutting Little

Sebago Lake. Specifically in dispute is a small triangle of land (Disputed Parcel)

situated between the properties of the Cravens and Defendants William K.

Moberg, Linda B. Moberg and the Moberg Family Real Estate Trust (Mobergs).

The Craven Family has owned their lot on Little Sebago since 1963 (Craven

Property). The Mobergs purchased their property, which abuts the Craven

Property, in 1997 from the Estate of Sadie Nissen (Moberg Property).[1] Sadie

Nissen held deed to the Moberg Property from 1945 until 1997.[2] Both parties

claim ownership to the Disputed Parcel.

---

[1] Though the Mobergs' acquired title in 1997, Mrs. Moberg's parents owned an abutting parcel that Mrs. Moberg visited annually during childhood and periodically thereafter.
[2] The parties agree that the July 1, 2007 Land Services, Inc. survey (Survey) represents the extent of the current encroachment onto the Moberg Property (emphasis added). Def. RSMF ¶10.

1

The Cravens assert that since prior to 1963 their only access to their property was by way of a dirt driveway that partially encroached on Moberg Property. It is the area surrounding this purported "driveway" that is in dispute. The Cravens also assert that, from time to time, they used the Disputed Parcel for over-flow parking and maintained the Disputed Parcel by "cleaning up leaves, branches and trees damaged by storms." SMF ¶20. In 1998, the Cravens began to access their property by a dirt road that was within their deeded boundaries, but continued to use the Disputed Parcel from time to time to access the camp and park vehicles. SMF ¶¶ 23-24. The Mobergs dispute all of these asserted facts.

Sometime after the year 2000 (the exact time is in dispute), the Cravens permitted their son-in-law and daughter to place a camper on the Disputed Parcel.[3] It is undisputed that neither the Mobergs nor their predecessor in interest, Sadie Nisson, used the Disputed Parcel. Whether or not Sadie Nisson discussed the use of the Disputed Parcel with the Cravens' predecessor in interest (Mr. Craven, Sr.) is difficult to ascertain, as both are deceased. The Cravens assert she never discussed the issue with Mr. Craven, Sr.

It is undisputed that Mrs. Moberg asked Mr. Craven to remove the camper. The exact date of that request is in dispute. Mrs. Moberg asserts that she made the request to Mr. Craven in 2001, at which time she showed him a

---

[3] There is a further dispute about where the camper was placed. The Mobergs allege that the camper was placed beyond the Disputed Parcel and was squarely and indisputably on their property. The Mobergs further allege that, in anticipation of this law suit, the trailer was moved within the bounds of the Disputed Parcel. Def. RSMF ¶ 25.

survey of her land. Mr. Craven asserts that she first made the request in 2006 to which he asserted his claim to the Disputed Land based on historical use.

Subsequent to this request, Mr. Craven's son-in-law, Mark Lavoie, removed a boundary marker and placed it, with a note, on Mrs. Moberg's Porch. The degree to which Mr. Lavoie was acting on behalf of the Cravens is in dispute. SMF ¶¶ 35-36.

## DISCUSSION

### I.     Standard of Review

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22.

"The standards for summary judgment in favor of a party with the burden of proof may be somewhat different, as the fact finder has the prerogative to disbelieve a witness and other affirmative evidence, even if that evidence is uncontradicted." Alexander, *The Maine Rules of Civil Procedure with Advisory and Committee Notes* § 56.1.4 (*citing Dionne v. LeClerc*, 2006 ME 34, ¶ 15, 896 A.2d 923, 929). At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

3

## II.     Adverse Possession

The Cravens move for summary judgment asserting that their historical use of the Disputed Parcel entitles them to a declaration that they have obtained a fee interest in the parcel by adverse possession. To obtain title by adverse possession, the moving party has the burden to "prove by a preponderance of the evidence that its possession and use of the property were" actual, open visible, notorious, hostile, under claim of right, continuous, exclusive, and "of a duration exceeding the twenty-year limitations period." *Striefel v. Charles-Keyt-Leaman Partnership*, 1999 ME 111, ¶ 6, 733 A.2d 984, 989 (citations omitted). "Whether specific acts are sufficient to establish the elements of adverse possession can only be resolved in light of the nature of the land, the uses to which it can be put, its surroundings, and various other circumstances." *Id.*

Whether or not title has passed by adverse possession is a "mixed question of law and fact." *Id.* ¶ 7, 733 A.2d at 989. The trial court must determine the facts of the case and then determine, as a matter of law, "what acts of dominion will result in creating title by adverse possession." *Id.*

### a.  Actual Possession

"'Actual' possession and use consist of a literal, physical entry upon the land, and are manifested by 'acts of occupancy [that] indicate a present ability to control the land and an intent to exclude others from such control." *Id.* ¶ 9, 733 A.2d at 989. While it is undisputed that the Cravens entered onto the Disputed Parcel it is disputed as to whether or not the Cravens "manifested acts of occupancy" or intended to exclude others from control of the land.

For example, the Law Court affirmed the finding of a claim in adverse possession where the family used the property for "cutting firewood, selling

4

gravel, family picnics, hunting and other activities." *Stowell v. Swift*, 576 A.2d 204 (Me. 1990). In contrast, no claim in adverse possession stood where the moving party used the property to "cut quite a large amount of pine." *Webber v. Mcavoy*, 104 A. 513, 514 (Me. 1918). Additionally, the court found only a prescriptive easement where the moving party used the land as a "driveway and parking area servicing their cabin." *Dowley v. Morency*, 1999 ME 137, ¶ 20 , 737 A.2d 1061, 1068.

In this case there is no evidence that, prior to the existence of the trailer in early 2000, the Cravens exercised the dominion over the property necessary to establish title by adverse possession.

### b. Open, Visible and Notorious Possession

By affidavit and deposition testimony of Mr. Craven, the Cravens assert that their possession of the Disputed Parcel was "open" ("without attempted concealment"), "visible" ("capable of being seen by persons who may view the premises") and "notorious" ("known to some who might reasonably be expected to communicate their knowledge to an owner maintaining a reasonable degree of supervision over his property"). *Id.* ¶ 11, 733 A.2d at 990. However, the Mobergs contest this asserting that the degree to which the Disputed Parcel is tree covered and obscured or has been obscured over the relevant twenty years is in dispute.

### c. Continuous Possession

Continuous possession means that the possession has been uninterrupted for the statutorily prescribed period. *Id.* ¶ 16733 A.2d at 993. The quality of the possession is use of "the kind and degree . . . that an average owner would make of the property." *Id.* Whether or not, and the degree to which the Cravens

5

continually possessed the Disputed Parcel prior to the placement of the trailer is in dispute.

### d. Statute of Limitations

In order to prevail on a claim of adverse possession, the moving party must satisfy all of the aforementioned elements of adverse possession "for a period of at least twenty years." Id. ¶ 18, 733 A.2d at 993. Because certain elements are disputed, it is yet to be determined whether or not the twenty-year statutory time period has been met.

### e. Adverse Possession Conclusion

Because the party seeking title by adverse possession must prove all of the elements of adverse possession by a preponderance of the evidence, and because some of the elements are in dispute, summery judgment should be denied.

## III. Vicarious Liability in Trespass

The Mobergs seek to hold the Cravens liable for the alleged trespass of the Cravens' son-in-law, Mark Lavoie. In general, in order to hold one party liable for the torts of another, some fiduciary or agency relationship must exist. *Bonk v. McPherson*, 605 A.2d 74, 78-79 (Me. 1992) (citations omitted).

> Since an agent who is not a servant is not subject to any rights of control by his employer over the details of his physical conduct, the responsibility ordinarily rests upon the agent alone, and the principal is not liable for the torts he may commit.

*Id.* However, in limited circumstances "a party can be held liable for the trespass of an otherwise independent contractor if the trespass was authorized as part of the contract, or was the natural result of the work contracted to be done, or the trespass was somehow directed or part of a common purpose, or the

6

trespass was ratified. *Id.* at 79. This liability should be narrowly construed. *Stockly v. Doil,* 2005 ME 47, ¶ 10, 870 A.2d 1208, 1211.

In this case, no contract is alleged to exist between the Cravens and Mr. Lavoie, nor is Mr. Lavoie an independent contractor of the Cravens.[4] The Mobergs, nonetheless, assert that genuine issues are in dispute regarding whether or not Mr. Lavoie was acting at the behest of the Cravens. However, the Mobergs have failed to proffer any evidence that the Cravens were exerting any control or dictating any behavior over or to Mr. Lavoie. Because liability is generally limited to "the person who actually commits a trespass," *id.,* summary judgment should be granted to the Cravens on this Count.

## Therefore, the entry is:

Plaintiffs' Motion for Summary Judgment is DENIED with respect to any claims of title by adverse possession.

Plaintiffs' Motion for Summary Judgment is GRANTED with respect to Defendants' counterclaim for vicarious liability in trespass.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this ___7th___ day of ___February___, 2008.

Roland A. Cole
Justice, Superior Court

---

[4] An "independent contractor" is defined as "[o]ne who is hired to undertake a specific project but who is left free to do the assigned work and to choose the method of accomplishing it." *Black's Law Dictionary* 342 (2d pocket ed. 2001).

AARON BALTES ESQ
PO BOX 4600
PORTLAND ME 04112

*Plaintiff*

ELLIOTT EPSTEIN ESQ
PO BOX 891
LEWISTON ME 04243

*Defendant*