**MAINE COAST HERITAGE TRUST**

v.

**Paul E. and Sara P. BROUILLARD.**

Supreme Judicial Court of Maine.

Argued March 3, 1992.

Decided April 13, 1992.

---

Barry K. Mills (orally), Hale & Hamlin, Ellsworth, for plaintiff.

Peter R. Roy (orally), Roy, Beardsley, Williams & Kesaris, Ellsworth, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, and COLLINS, JJ.

COLLINS, Justice.

Paul and Sara Brouillard appeal from a Superior Court order (Hancock County, *Smith, J.*), adopting a referee's report that found that the Brouillards' predecessors in title had not established an easement by prescription across a piece of property, now owned by Maine Coast Heritage Trust. On appeal, the Brouillards argue that the referee erred in finding that their predecessors' use of the right of way was permissive. We find ample support for the referee's findings in the record and affirm.

The Brouillards purchased a shorefront lot in Castine from the Jenks family in 1987. The Jenks are direct descendants of the Walker family who had owned the lot since the late 1800's. Title has been passed by way of inheritance until the transfer to the Brouillards. The lot has no road frontage and no deeded right of way. Historically the lot has been reached by way of an access road that crosses an adjacent piece of property known as the Witherle Woods.

From the late 1800's until 1950 the Witherle Woods were owned by the Witherle family. The property offers striking views of Penobscot Bay. The Witherles built carriage roads on the property and erected an observatory. The Witherles allowed the public to use the property for recreation. They also allowed the Walkers, who then owned a nearby hotel, to conduct carriage rides on the property.

The Walkers built a camp on the lot in 1911. About the same time the camp was built, a stone wall that separated Witherle Woods from the Walkers' lot was breached at the location of the access road in question. The camp fell into ruin in the early 1940's. During the approximately thirty-five years the camp was standing, the Walker family made frequent use of the access road. Since the collapse of the cabin, use of the access road has been sporadic, averaging slightly less than one trip a year. The Witherle property was sold to the Hatches in 1950 and they continued the practice of allowing public access.

The first indication the Jenks had of any problem concerning their use of the access road was in 1978 when they listed the property for sale. A real estate broker told them he had seen a sign posted at the beginning of the access road restricting its use and prohibiting motorized vehicles. At that time the Witherle Woods were still owned by the Hatch family. The Jenks wrote to Mrs. Hatch and, after receiving no reply, attempted to meet with her. She refused to see them.

The Hatches sold the property to the Maine Coast Heritage Trust in 1985, and

**200** ■ ■

the Trust initiated this action in an attempt to enjoin the Brouillards from using the access road. The Trust sought to limit the Brouillards' use to that allowed to the general public, a limitation that would prohibit the Brouillards from driving along the access road to reach their lot.

The parties agreed to have the case heard by referee. The referee found that the Brouillards' predecessors in title had made regular vehicular use of the access road for more than twenty years during the early 1900's. She determined that the use was indistinguishable from that of the general public and therefore not open or notorious. She concluded that the Walkers had been given a license to use the access road and that that license had been passed down to subsequent owners. The Superior Court adopted the referee's report over the Brouillards' objection and this appeal followed.

The Brouillards challenge the referee's findings of fact and this Court will not disturb a referee's factual findings unless they are clearly erroneous. *Calthorpe v. Abrahamson*, 441 A.2d 284, 288 (Me.1982), M.R.Civ.P. 53(e)(2). Specifically, the Brouillards assert that the referee erred in 1) determining that their predecessors in title were granted a revocable license to use the access road; 2) finding that the Walkers'/Jenks' use of the Witherle property was indistinguishable from that of the general public; 3) failing to consider the possibility that a prescriptive easement had been established after, rather than prior to, 1950; and 4) finding that the breaching of the stone wall was not sufficient evidence of adverse use.

**I**

■ During the early 1900's it is apparent that the Walkers were granted a license to use the Witherle Woods. Their hotel, the Acadia, advertised tours of the woods. The Brouillards do not claim that this use by their predecessors in title was adverse. The scope of the license granted to the Walkers is unclear. The Walkers and the Witherles were friends and the license certainly could have included the right to use the access road, which was part of a system of carriage roads that crisscrossed the park, for conducting their tours. The cabin appears to have been used by the guests of the hotel as well as the Walkers. The access to the cabin could easily have been within the scope of the license granted for conducting tours of the park. On this record, the referee was not compelled to conclude that the Walkers' use of the access road prior to 1950 was adverse or under claim of right. *See Blackmer v. Williams*, 437 A.2d 858, 860 (Me.1981).

**II**

■ The Brouillards are correct in their assertion that the Walkers' use of the Witherle property was distinguishable from that of general public. The Walkers, as owners of the Acadia Hotel were allowed to use the park for commercial purposes while the general public could only use it for recreational purposes. However, this does not undermine the referee's determination that the Walkers' use was permissive and therefore, while the finding that the Walkers' use of the woods was indistinguishable from that of the general public is erroneous, that error is harmless. *State v. True*, 438 A.2d 460, 467 (Me.1981).

**III**

■ No use of the road was shown from 1950 to 1957. From 1957 until 1961 Mary Jenks only visited the property occasionally to birdwatch and entered on foot. From 1962 to the present the road was used slightly less than once a year. This level of use was certainly not sufficiently open and notorious to give rise to a presumption that the Hatches had knowledge of the use or that the Jenks' use was under a claim of right. *See Blackmer v. Williams*, 437 A.2d 858, 860 (Me.1981). In 1978, the Hatches posted the entrance to the road with a sign prohibiting access by motorized vehicles. The record does not show the referee's implicit finding that no prescriptive easement was established after 1950 to be clearly erroneous.

## IV

No evidence was presented on the issue of exactly who breached the stone wall or exactly when they breached it. Testimony was given that by passing through the breach one could reach an area known as Trasker's Rock in addition to accessing the Brouillards' property. The Witherles may have given the Walkers permission to open the stone wall. The fact that the wall was breached, with no further information in the record, does not constitute compelling evidence of adverse use.

The entry is:

Judgment affirmed.

All concurring.