Kent W. TAYLOR

v.

George O. NUTTER, et al.

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 16, 1996.
Decided Dec. 27, 1996.

Daniel H. Reich, Bethel, for Plaintiff.

John S. Jenness, Jr., South Paris, for Defendants.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

DANA, Justice.

George Nutter and Claudia Blondell appeal from a judgment entered in the Superior Court (Oxford County, *Marsano, J.*) after a nonjury trial finding that Kent Taylor acquired a prescriptive and an implied easement across their property. Finding competent evidence in the record to support the court's conclusion that Taylor acquired an easement by prescription, we affirm the judgment.

Taylor owns a parcel of land in Lovell that his grandmother inherited in 1945. Nutter and Blondell jointly own the parcel adjoining the eastern boundary of Taylor's parcel. Blondell bought the parcel on the eastern side of the Nutter and Blondell lot from Diamond Occidental Forest, Inc., in 1990. A public road known as the Slab City Road runs along the northern boundary of the three parcels.

In 1950, Taylor's grandmother leased a portion of her land to the Maine Department of Fish and Game to create a bass pond. To facilitate construction of the pond, the State put in a road that ran from the Slab City Road across the two parcels now owned by

Nutter and Blondell to the pond site on Taylor's land. The State also buried water pipes alongside the road to reach a nearby brook that would provide water for the pond and constructed a dam on Blondell's parcel to moderate the water flow. The Department of Fish and Game maintained the pond for two or three years and then abandoned the project. Taylor's family, however, continued to maintain the dam in order to keep water in the pond and traveled across Nutter and Blondell's land to access the dam.

In August 1993, Taylor filed a complaint against Nutter and Blondell asserting that he had acquired a prescriptive easement across their land. The court concluded that there was "an implied easement in, and a prescriptive easement of the right of maintenance and repair of the dam, sluice way, and subterranean pipes necessary to maintain and regulate the flow of water into the Taylor pond located upon the Taylors' property." Nutter and Blondell appeal the court's judgment.

## I.

 Nutter and Blondell first contend that the court erred in finding that the Taylors' travel across their land was continuous for twenty years. To establish a prescriptive easement, the claimant must show " 'continuous use for at least twenty years under a claim of right adverse to the owner, with his knowledge or acquiescence, or by a use so open, notorious, visible and uninterrupted that knowledge and acquiescence will be presumed.' " *Jost v. Resta*, 536 A.2d 1113, 1114 (Me.1988) (quoting *Dartnell v. Bidwell*, 115 Me. 227, 230, 98 A. 743, 744 (1916)). We will "review the factual finding as to the element of continuity of use for clear error, and will affirm a court's finding of fact if there is any competent evidence in the record to support it." *Gutcheon v. Becton*, 585 A.2d 818, 821 (Me.1991) (citations omitted).

There is competent evidence in the record to support the court's conclusion that the Taylors used Nutter and Blondell's property continuously for twenty years. Taylor testified that starting in approximately 1955 he traveled over the land with various members of his family on a regular basis after the

State abandoned the bass project. Ronald McAllister, a friend of the Taylors and a local resident, testified that during the '50s and early '60s he visited the dam three or four times with Taylor's father to check the water flow and adjust the dam. Although Taylor testified that he could not estimate the number of times he and his family crossed the property when he was a child, he stated that they "always went down through there" and that it "was a regular thing to do." He testified that he and his family occasionally drove to the dam in a van or a pickup to take tools to the site and clear brush from the road. When Taylor and his family were away, they had a caretaker on the property whom they informed how to maintain the dam and the water flow into the pond. The witnesses' testimony provides competent evidence to support the court's conclusion that the Taylors traveled across Nutter and Blondell's land continuously for twenty years and the court's finding was therefore not clearly erroneous.

 Nutter and Blondell next contend that the court erred in finding that the Taylors' use was under a claim of right adverse to the owners of the servient tenement. Adverse use arises when a party uses the land "as though he owned the property himself" and without the owner's permission. *Blanchard v. Moulton*, 63 Me. 434, 437 (1873). Whether a party's use is adverse is a question of fact that we will uphold absent clear error. *Jacobs v. Boomer*, 267 A.2d 376, 380 (Me.1970).

There is competent evidence in the record supporting the court's finding that the Taylors' use of the property was under a claim of right adverse to Nutter and Blondell and their predecessors. The Taylors never sought permission to travel across the property or to maintain the dam after the State abandoned the bass pond project. Furthermore, the Taylors treated the way as their own, clearing brush from the road and manipulating the dam and the pipes to keep water in the pond on their property.

 Nutter and Blondell also challenge the court's conclusion that the landowners acquiesced to the Taylors' travel across the

property and their use of the dam. The element of acquiescence requires passive assent to the claimant's use, "as distinguished from the granting of a license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it." *Pace v. Carter,* 390 A.2d 505, 507 (Me.1978) (citations omitted). Although Nutter and Blondell argue that there is no evidence that they or their predecessors had knowledge of or acquiesced to the Taylors' use of the property, a court may presume that the owners acquiesced to the claimant's use if the claimant can show that the use was open, notorious, and uninterrupted. *See Jost,* 536 A.2d at 1114–15. Whether a use is open and notorious depends on the level of use of the way. *See Maine Coast Heritage Trust v. Brouillard,* 606 A.2d 198, 200 (Me.1992) (occasional entry by foot for four years followed by use slightly less than once a year for the next thirty years was not sufficiently open and notorious to give rise to a presumption that owners knew of use). The purpose of requiring the use to be open and notorious is to provide the owner with sufficient opportunity to assert his rights against the user. *Kaupp v. City of Hailey,* 110 Idaho 337, 715 P.2d 1007, 1010 (Ct.App.1986). We will reverse the court's finding of acquiescence only if it is clearly erroneous. *See, e.g., Pace,* 390 A.2d at 507–08.

The Taylors' use of the land over the years was sufficiently open and notorious to give rise to the presumption that Nutter and Blondell and their predecessors knew of and acquiesced in the Taylors' use of the way. Thelma Woods, a resident of Lovell who has lived near the Taylors' property for more than fifty years, testified that she saw Taylor's father use the road across Blondell's parcel to get to the dam. Other witnesses testified that a path or a road to the dam was visible in 1976 and 1990. Although Diamond Occidental's woodlands manager, Harold Dow, stated that he never saw anyone crossing the land after the State abandoned the bass project, he only visited the property on an average of once a month beginning in 1969. Furthermore, the court was free to disregard Blondell's assertion that she was unaware of Taylor's use of the land in light of the other witnesses' testimony that the traveled way was visible and Taylor's testimony that his family regularly visited the dam on her property.[1]

## II.

Nutter and Blondell assert that even if the court did not err in finding a prescriptive easement, the court's order overburdened the easement created by the Taylors' use. Overburdening may occur when the present use of the easement changes from past practices and the change "manifest[s] itself in some greater independent burden on the servient estate" that unreasonably or unforeseeably interferes with the landowner's enjoyment. *Gutcheon,* 585 A.2d at 822. Here, the court carefully limited the Taylors' right to use Nutter and Blondell's land to the type of use established in prior years, allowing use of a vehicle "at reasonable times to go over the way found by the court for the purpose of access to the dam *only* for purposes of maintenance and repair of the dam, the pipes, and the flowage system." Because the court's order does not allow the Taylors to use the road in a way that unreasonably or

1. Nutter and Blondell correctly point out one error by the court regarding the landowner's acquiescence, but the error is harmless and does not preclude a finding that Taylor acquired a prescriptive easement. The court's order states that one Ronald McAllister testified about his father's acquiescence to the Taylors' repairs to the dam in the 1950s. Ronald McAllister did not provide such testimony. He was a neighbor of the Taylors who testified about Taylor's father's use of the dam. Kenneth McAlister, who the court erroneously thought was Ronald McAllister's father, was the owner of the land adjoining the Taylors' parcel until he sold it to Nutter and Blondell in 1977. There is no evidence in the record that the two men are related, and there is no evidence regarding Kenneth McAlister's acquiescence to the Taylors' travel across his land. The court's error, however, does not affect the validity of its order because there is sufficient evidence of the Taylors' continuous, open and notorious use to presume that the landowners acquiesced to such use. The court's error is therefore harmless. *See Brouillard,* 606 A.2d at 200 (referee's finding that claimant's use of land was indistinguishable from general public's use was erroneous, but error did not undermine referee's determination that claimant's use was permissive and error was therefore harmless).

unforeseeably interferes with Nutter and Blondell's enjoyment of their property, the order does not overburden the Taylors' easement.

### III.

■■■ Nutter and Blondell contend that the court erred in concluding that there was an implied easement across their land because there was no evidence of a common grantor. We agree. An implied easement may be created when a grantor conveys a piece of land from a larger parcel and use of the retained parcel is strictly necessary to the enjoyment of the conveyed land. *Frederick v. Consolidated Waste Serv., Inc.* 573 A.2d 387, 389 (Me.1990); *LeMay v. Anderson,* 397 A.2d 984, 987 (Me.1979). An implied easement also may arise "when a common grantor severs real estate, conveying part of it and retaining the balance (or conveying it to a third person), and the circumstances at the time of the conveyance denote the grantor's intent to subject the retained land (the servient estate) to an easement benefitting the conveyed land (the dominant estate)." *Frederick* 573 A.2d at 389 (citations omitted). There is no evidence in the record showing that Nutter and Blondell's property was once part of a larger parcel that was divided under circumstances that could give rise to an implied easement by necessity or from the grantor's intent to benefit the conveyed parcel.

The entry is:

Judgment affirmed.

All concurring.