2004 ME 117

**Patricia SHRADER–MILLER**

v.

**John F. MILLER et al.**

Supreme Judicial Court of Maine.

Argued: June 9, 2004.

Decided: Sept. 8, 2004.

Catherine R. Connors, Helen L. Edmonds (orally), Clifford H. Ruprecht, Pierce Atwood, Portland, for appellants.

Susan B. Driscoll (orally), Bergen & Parkinson, L.L.C., Kennebunk, for appellees.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] John F. Miller and his wife, Norma F. Miller, appeal the judgment of the Superior Court (York County, *Fritzsche, J.*) declaring that (1) their late son's real estate is not burdened by an access easement, and (2) their real estate is subject to an implied sewer easement. They also appeal the statutory treble damages assessed against them for trespass and the award of punitive damages for their malicious conduct. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Patricia Shrader–Miller brought a complaint in five counts against the Millers, the parents of her deceased husband. Shrader–Miller is the personal representative and beneficiary of her husband's estate. She sought an injunction to keep the Millers from interfering with property belonging to the estate; damages for common law and statutory trespass and for intentional interference with a sewer easement; and a declaratory judgment regarding an access easement. The Millers counter-claimed, seeking a declaration that they had an access easement by deed. A jury-waived trial was held.

[¶ 3] The dispute concerns a small lot and house in Ogunquit that was owned by the Millers for many years before they conveyed it to their son in 1998. The Millers also own and reside in the house next door to the conveyed property. Their son died in September 2002. The real estate they conveyed to him is now an asset of the son's estate.

[¶ 4] When the Millers conveyed the estate property to their son, they attached limitations and restrictions in the deed. The son was not to convey the property to any other person in joint tenancy, and he could not sell it before giving a right of first refusal to the Millers' nephew and then to his sister. At the time the Millers conveyed the estate property to their son, it was connected to the town sewer system through the Millers' sewer line.

[¶ 5] A short time before the son died, he decided to sell the property and entered into an agreement with a purchaser. The son notified the nephew and sister about the prospective sale and the purchase price, and he stated that they had thirty days in which to exercise their right of first refusal. The son died before the thirty days expired.

[¶ 6] As the personal representative of the estate, Shrader–Miller chose to go forward with the sale of the estate property. Through her attorney, Shrader–Miller communicated with the nephew and sister, and she obtained an appraisal of the property. After several months, the nephew declined to purchase the property as he

disagreed with the price, and the sister also refused, saying that the price was too high. In the meantime, the prospective purchaser withdrew the purchase offer. As of the trial in October 2003, no sale of the estate property had taken place.

[¶ 7] In December 2002, Miller disconnected the sewer from the estate property, and he and his wife notified the Ogunquit code enforcement officer that the estate property was no longer connected to the sewer. The Town then posted the house as uninhabitable. The Millers did not notify Shrader–Miller that they were going to disconnect the sewer. At trial, Miller testified that he disconnected the sewer line because of an old agreement with a deceased neighbor, but the court found that this excuse was not believable. The court concluded that there was an implied easement to the sewer line.

[¶ 8] In May 2003, the Millers hired a contractor to replace lawn on the estate property with a semi-circular gravel driveway around the house on the estate property. The court found that the driveway surrounded the estate house like a moat. The Millers also removed two bushes on the estate property. The Millers testified that they constructed the driveway because of a history of a driveway in that location. Also, Mrs. Miller had had hip replacement surgery two years earlier, and they wanted closer access to their house than their own paved driveway allowed.

[¶ 9] The deed from the Millers to their son referred to an "easement of record for purposes of access" to the Millers' land. Two experts, who had examined the numerous deeds to the properties, testified about them and whether there was an access easement of record over the estate property. Other witnesses testified about the historical use of the property. The court concluded that "no easements ever existed in or near to the location of the new driveway." The court found that although a driveway had existed in the 1950s in about the same location as the new driveway, there was no easement of record.

[¶ 10] The trial court characterized the Millers' disconnection of the sewer and construction of the gravel driveway as "actions which were vindictive and motivated by ill will." It concluded that the Millers' removal of the bushes was intentional. The court found: "These acts were done to punish [Shrader–Miller], discourage and interfere with the sale of the property and reduce the value received in the event of a sale." The court further stated: "The decision of the Millers to build a driveway without consultation with or warning to [Shrader–Miller] was unjustified and was done, by clear and convincing evidence, with malice." Further, the decision to disconnect the sewer "was done out of hatred for the woman who had married their son."

[¶ 11] The court issued an injunction against the Millers restraining them from entering upon the estate property. It also ordered the Millers to reconnect the sewer line. The judgment declared that the Millers have no easement rights across the estate property and that there is an implied sewer easement burdening the Millers' property. The court granted a judgment to Shrader–Miller on the statutory trespass claim, awarding damages of $2250 consisting of $500 for the intentional destruction of the bushes, $250 for professional services, and $1500 for removal of the driveway. The court ordered the Millers to pay punitive damages of $10,000 to Shrader–Miller. The court also granted judgment to Shrader–Miller on the Millers' counter-claim seeking a declaration of an access easement of record. The Millers filed a postjudgment motion to amend and for further findings of fact, which the court denied.

## II. DISCUSSION

### A. Access Easement

[¶ 12] The Millers appeal the declaration that there is no easement on the estate property benefiting the Millers' property. They do not now challenge the trial court's conclusion that there is no easement of record, but they contend that there is an implied access easement. However, they raise this contention for the first time on appeal. In the trial court they only asserted that they had an access easement by deed, and, therefore, they have failed to preserve the issue of an implied access easement. For that reason, we do not review the issue. *Landmark Realty v. Leasure*, 2004 ME 85, ¶ 10, 853 A.2d 749, 751.

### B. Implied Sewer Easement

[¶ 13] The Millers also challenge the declaration of an implied sewer easement. They claim that Shrader–Miller failed to present sufficient evidence from which the court could find an implied easement. We review the trial court's determination of the existence of an implied easement for clear error. *See Frederick v. Consol. Waste Servs., Inc.*, 573 A.2d 387, 390 (Me.1990).

[¶ 14] An implied easement may be created when a grantor severs real estate, conveying part and retaining part, and the circumstances at the time of the conveyance demonstrate that the grantor intended the retained portion to be subject to an easement benefiting the conveyed portion. *Id.* at 389; *Taylor v. Nutter*, 687 A.2d 632, 636 (Me.1996). The nature of the use of the easement and its importance are relevant to determining whether there is an implied easement. *Bowers v. Andrews*, 557 A.2d 606, 609 (Me.1989).

[¶ 15] The Millers owned both their present house and lot and the estate property when they conveyed the estate property to their son in 1998. The Millers winterized and remodeled the estate property in 1979 so their son could live in it. At that time it was connected to the town sewer through the Millers' sewer line on the Millers' property. Without a sewer connection, the house was uninhabitable. Off and on from 1979 until his death, the son lived in the estate property. On these facts, it was not error for the trial court to conclude that the circumstances at the time of the 1998 conveyance were such that the Millers intended that their retained property be burdened by a sewer easement and that such easement was important to the habitability of the estate property. The Superior Court did not clearly err in finding an implied easement.

### C. Treble Damages

[¶ 16] When a person "intentionally or knowingly" destroys or carries away agricultural products, the person "is liable to the owner for 3 times the owner's damages ... or $500, whichever is greater." 14 M.R.S.A. § 7552(4)(B) (2003). Damages are measured by either the value of the products or the diminution in the value of the real estate, whichever is greater. *Id.* § 7552(3)(A). The court found the combined value of the bushes was $100. Therefore, the trebled amount is $300, but because $500 is greater than the trebled amount, the court awarded the greater amount.[1] *Id.* § 7552(4)(B).

[¶ 17] The Millers challenge the award of treble damages on the ground

---

1. This opinion uses the term "trebled damages" to refer to the amount awarded under 14 M.R.S.A. § 7552(4)(B) (2003) even though the amount in this case is actually more than three times the value of the bushes.

that the evidence was insufficient to find that the Millers intentionally or knowingly damaged or carried away the bushes on the estate property. We review the court's factual finding that the act was intentional or knowing for clear error. *Morissette v. Somes*, 2001 ME 152, ¶ 13, 782 A.2d 764, 768.

[¶ 18] For an act to be committed "knowingly" as that term is used in section 7552(4)(B), we have said that "the defendant must be subjectively aware that the cutting is improperly taking place on another's land." *Bonk v. McPherson*, 605 A.2d 74, 77 (Me.1992). Although we have not defined "intentionally" as it is used in section 7552, in the *Morissette* case we said that "intentionally" requires "greater culpability" by the actor than "willfully." *Morissette*, 2001 ME 152, ¶ 15, 782 A.2d at 768. Section 7552 previously read "willfully or knowingly," 14 M.R.S.A. § 7552 (Supp.1994),[2] in place of the current "intentionally or knowingly," 14 M.R.S.A. § 7552(4)(B). We had interpreted "willfully" to mean conduct displaying "an utter and complete indifference to and disregard for the rights of others." *Guilmet v. Galvin*, 597 A.2d 1348, 1349 (Me.1991) (quotation marks omitted). Therefore, in order to obtain treble damages for the destruction of the bushes, Shrader–Miller had to prove that (1) the Millers were subjectively aware that their conduct was contrary to Shrader–Miller's rights in the property, or (2) the Millers' conduct displayed more than an utter and complete indifference to and disregard for Shrader–Miller's rights.

[¶ 19] The Millers argue that they believed that they had an access easement and the right to construct the gravel driveway, as well as to tear out the bushes. Their belief, they contend, is sufficient to defeat a finding that they acted "knowingly or intentionally" within the context of section 7552. Although the Millers testified about their belief, the trial court was apparently not persuaded that they actually held such a belief.[3] The trial court did not expressly state that it disbelieved the Millers on this point,[4] nor did it expressly find that the Millers had a subjective awareness of the wrongfulness of their conduct, but it found that the Millers' actions were driven by malice, vindictiveness, and hatred for Shrader–Miller. This motivation belies the Millers' suggestion that they acted out of their belief that they had an access easement. Furthermore, the court expressly found that the Millers' actions were taken with the purpose of punishing Shrader–Miller and lowering the value of the estate property. The court's description of the Millers' actions and their reasons for acting the way they did leaves little doubt that the court found that (1) the Millers were subjectively aware of the

2. The previous version of section 7552 was amended by P.L. 1995, ch. 450, § 2 (effective Sept. 29, 1995) and P.L.1995, ch. 585, §§ 2–4 (effective July 4, 1996). *Bonk v. McPherson*, 605 A.2d 74, 76–77 (Me.1992).

3. The Millers' testimony as to their belief that they held an access easement was inconsistent. They testified that they believed they had an easement, but at one point Mrs. Miller admitted that they did not have a right of way over the estate property. Mr. Miller acknowledged that he had represented in a 1979 building permit application that no easement existed.

4. The Millers argue that the trial court found that the Millers believed that they had a right to construct the gravel driveway because of Mrs. Miller's hip replacement surgery, the past existence of a driveway, and the language in the son's deed referring to an easement of record. However, the sentence in the court's decision to which the Millers refer, when taken in the context of the paragraph in which it appears, is a recitation of the claims of the Millers and not a finding of fact.

wrongfulness of their actions in destroying the bushes, and (2) more than disregarding and being indifferent to Shrader–Miller's rights, they intended to affect adversely the value of her property. Therefore, we affirm the award of treble damages.

## D. Punitive Damages

[¶ 20] The Millers next contend that the evidence was insufficient for a finding of malice, by clear and convincing evidence, which finding is necessary before a court may award punitive damages. *Tuttle v. Raymond,* 494 A.2d 1353, 1363 (Me.1985). We review factual findings, when the burden of proof is clear and convincing evidence, to determine if the fact-finder "could reasonably have been persuaded that the required factual findings were proved to be highly probable." *In re Serena C.,* 650 A.2d 1343, 1344 (Me. 1994) (quotation marks omitted).

[¶ 21] The Millers argue that their dislike or hatred for their daughter-in-law is not a sufficient basis to find malice. Contrary to their argument, however, their hatred was not the only evidence that they acted with malice. They did not want the estate property to be sold outside of the family, and the family members did not want to purchase the property because of its high price. Therefore, the Millers acted to lower the value of the estate property by disconnecting the sewer, thereby making the house uninhabitable, and by surrounding it with a gravel driveway, thereby making it unattractive. As stated above, the court found that these acts were done to punish Shrader–Miller and to "discourage and interfere with the sale of the property and reduce the value." We conclude that the trial court did not clearly

err in finding the requisite malice for an award of punitive damages.

[¶ 22] The Millers also contend that the amount of punitive damages was excessive. When there is a claim of excessiveness of the amount of punitive damages, we review the amount for an abuse of discretion. *Haworth v. Feigon,* 623 A.2d 150, 159 (Me.1993). We consider the reprehensibleness of the conduct; the amount awarded in relationship to the harm; and the amount compared with sanctions imposed for similar behavior. *Harris v. Soley,* 2000 ME 150, ¶ 31, 756 A.2d 499, 508. Further, we consider mitigating circumstances, such as the financial situation of the liable party. *Hanover Ins. Co. v. Hayward,* 464 A.2d 156, 158 (Me. 1983).

[¶ 23] The Millers' conduct was reprehensible in that their actions limited Shrader–Miller's ability to sell the estate property and made it uninhabitable. Their conduct was not as reprehensible as the landlord's conduct in *Harris v. Soley,* where the landlord's actions not only resulted in making the premises uninhabitable, but imposed mental distress and other property damage on the tenants. *See id.* ¶ 32, 756 A.2d at 509. Accordingly, the $1,000,000 amount of punitive damages awarded in *Harris v. Soley,* which we affirmed on appeal, *id.* ¶¶ 29, 35, 756 A.2d at 508, 510, reflects more reprehensible conduct than does the $10,000 awarded in this case.

[¶ 24] In comparing the ratio of punitive damages to the actual harm, we note that in *Harris v. Soley* the ratio of punitive damages to compensatory damages was sixteen to one. *Id.* ¶ 33, 756 A.2d at 509. In this case the ratio is closer to seven to one.[5] With regard to mitigating factors,

5. The amount of compensatory damages awarded for restoring the area where the driveway was constructed was $1500. No

compensatory damages were awarded for interfering with the sewer easement, but the court ordered the Millers to reconnect the

there is very little evidence of the financial situation of the Millers. They are retired; they own their residence in Ogunquit; and they had sufficient assets to pay for the construction of the gravel driveway. Considering all of the above factors, from the reprehensibleness of the conduct to the Millers' finances, we conclude that the Superior Court did not exceed the bounds of its discretion in awarding the amount of $10,000 in punitive damages against the Millers.

 [¶ 25] Finally, the Millers argue that a court cannot award both treble damages and punitive damages. Assuming that the statutory treble damages are a substitute for punitive damages for the intentional or knowing removal of agricultural products from the land of another, it follows that it is improper to award both treble damages and punitive damages against a defendant for the destruction of such products. It does not follow that punitive damages cannot be awarded for conduct that is separate and distinct from the conduct regulated by the statute.

[¶ 26] The court awarded treble damages for the removal of the bushes and punitive damages for the construction of the driveway and the disconnection of the sewer line. All of the Millers' actions at issue arose out of the same animus they felt for Shrader–Miller and out of their desire that ownership of the estate property remain in the family. However, they engaged in separate and distinct actions to punish Shrader–Miller and lower the value of the estate property. In particular, the disconnection of the sewer had nothing to do with either the construction of the driveway or the removal of the bushes. While the construction of the driveway may be somewhat connected with the removal of the bushes, construction of the

driveway was a much larger project than removing the bushes and had a greater impact. Because the treble damages were awarded for the Millers' conduct in removing the bushes and the punitive damages were awarded for the Millers' other conduct, both awards can stand.

The entry is:

Judgment affirmed.

line. The ratio of seven to one does not include the trebled damages for the destruc-

tion of the bushes or other costs awarded pursuant to 14 M.R.S.A. § 7552.