2011 ME 2

**Marc J.J. DUPUIS Jr.**

v.

**Ronald SOUCY et al.**

Supreme Judicial Court of Maine.

Argued Oct. 6, 2010.
Decided Jan. 4, 2011.

Jamie I. Nichols, Esq. (orally), Sherman & Sandy, Waterville, ME, for Ronald and Danuta Soucy.

Alton C. Stevens, Esq. (orally), Marden, Dubord, Bernier & Stevens, Waterville, ME, for Marc J.J. Dupuis, Jr.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1]   Ronald and Danuta Soucy appeal from a judgment and order awarding attorney fees in favor of Marc J.J. Dupuis Jr. entered in the Superior Court (Kennebec County, *Mills, J.*) in two consolidated cases seeking a declaratory judgment of the boundary between the parties' properties and alleging trespass pursuant to 14 M.R.S. § 7552 (2009).[1]   The Soucys argue that the court erred in determining the

---

1.  The relevant statute provides:

  **2. Prohibitions.** Without permission of the owner a person may not:

  **A.**   Cut down, destroy, damage or carry away any forest product, ornamental or fruit tree, agricultural product, stones, gravel, ore, goods or property of any kind from land not that person's own;  or

  . . . .

  **C.**   Disturb, remove or destroy any lawfully established transit point, reference point, stake, plug, hub, guardstake, bench mark, pipe, iron, concrete post, stone post or other monument of any railroad, highway, public utility or other engineering location or survey or any such monument marking the bounds of public or private property.

  . . . .

  **8. Other actions barred.**   A recovery from a defendant under this section bars an action to recover damages under section 7551–B from that defendant for the same specific damage.

14 M.R.S. § 7552(2), (8) (2009).

boundary line and in finding that they acted intentionally or knowingly when cutting Dupuis's trees in the disputed area. The Soucys also argue that there was insufficient evidence to award damages against Danuta Soucy and that the trial court's award of attorney fees violated section 7552.[2] Because we find that the court acted within its discretion in accepting the conclusions of Dupuis's surveyor and delineating the boundary line, we affirm the boundary determination. We also affirm the court's finding that Ronald Soucy acted intentionally or knowingly when he cut the trees. However, we find that there is insufficient evidence in the record to support a judgment against Danuta Soucy, and section 7552(5) controls the award of attorney fees. Accordingly, we affirm in part, vacate in part, and remand for a recalculation of attorney fees.

## I. BACKGROUND

[¶ 2] Dupuis and the Soucys own abutting properties in Winslow. The Soucys purchased their property in June 1979, and Dupuis purchased his property in June 2005. This dispute concerns the northern boundary of the Dupuis property and the southern boundary of the Soucy property.

[¶ 3] Originally, one family owned both parcels. When the owners sold property to the Soucys, they reserved to themselves the property now owned by Dupuis. Larry Pelotte purchased the latter parcel from the original family, and Dupuis purchased the property from Pelotte. In 1984, when Pelotte purchased the property, he walked the property lines with a member of the original family and noticed four pins marking the property: one at the northeast corner of the land, one at the northwest corner, one about fifty feet south of the northwest corner pin, and one at the southeast corner of the land by the road.

[¶ 4] In 1984 and 1985, Pelotte cleared the land, mowed, and planted trees on the northern line of his property. Before he planted the trees, he strung a rope from the northeast corner pin to the northwest corner pin to mark the property boundary. Soucy adjusted the line because the rope was bowed, but he did not move the pins; he then indicated that he was satisfied with the line.[3]

[¶ 5] When Dupuis purchased the property in 2005, he walked the property line with Pelotte and saw the same four pins that Pelotte had noticed in 1984. Dupuis trimmed the trees that Pelotte had

---

2. The relevant statute provides:

  **1. Definitions.** As used in this section, unless the context otherwise indicates, the following terms have the following meanings.

  . . . .

  **E.** "Professional services" may include:
  (1) The damage estimate of a licensed professional forester;
  (2) A boundary survey;
  (3) A title opinion; and
  (4) Attorney's fees for preparing the claim and bringing a court action.

  . . . .

  **5. Costs and fees.** In addition to damages, interest and costs, the owner may also recover from the person who violates subsection 2 the reasonable costs of professional services necessary for determining dam-

ages and proving the claim, provided that the person first has written notice or actual knowledge that a claim is being asserted. The amount awarded for professional services may not exceed 50% of the damages recovered pursuant to subsection 4 plus interest on the damages. Interest may be assessed after service of a notice of claim pursuant to section 1602.

14 M.R.S. § 7552(1), (5) (2009).

3. Soucy's account was slightly different—he testified at trial that he asked Pelotte to move some of the trees because he was worried that they were too close to his septic system, and Pelotte moved them—but he agreed that he did not complain further or otherwise contest the boundary.

planted and mowed the area under the trees. He put a camper and volleyball net in the area that is now in dispute.

[¶ 6] In 2007, Ronald Soucy first indicated that he was no longer content with the boundary line. At trial, he testified that he thought about a garden that he used to have, and he concluded that the garden extended over the current boundary line, which caused him to question the true location of the boundary.[4]

[¶ 7] In the late summer of 2007, Ronald Soucy strung a cable across the boundary between the Dupuis and Soucy properties, stretching from the northeast corner pin to the northwest corner pin. That fall, Elwood Ellis began to survey the Soucy parcel at Soucy's request. Because there was a concern about the boundary line, Ellis also surveyed the Dupuis property. Ellis finished that survey in the spring of 2008. In April 2008, Soucy strung a cable from the northeast corner pin to the pin about fifty feet south of the northwest corner pin, declared that this was the boundary, and proceeded to cut down seven or eight of the trees Pelotte had planted that were north of this new line. When he discovered that the trees had been cut, Dupuis left a note for Soucy, requesting that he refrain from cutting more trees until the matter was resolved. Soucy apologized.

[¶ 8] Soucy testified that Ellis gave him the results of the survey soon thereafter, and that the survey indicated that the trees were on the Soucy property. Soucy then cut an additional fifty-two trees and some of the tree stumps. He also pulled one of the pins, which he thought, based on Ellis's conclusions, had nothing to do with

the boundary. Although Soucy claimed that he relied on Ellis's conclusions in taking these actions, Ellis testified at trial that the surveys were not finished, stating: "They are not completed at this point in time. It is an unresolved issue at this point."

[¶ 9] Also in the spring of 2008, Dupuis hired David Wendell to survey the property. The first time Wendell went to the property, only a few trees had been cut along Dupuis's northern boundary. Wendell's survey concluded that the boundary was further north than Ellis's survey indicated and that the trees were all on the Dupuis property.

[¶ 10] On October 27, 2008, Ronald and Danuta Soucy filed a complaint against Dupuis in the Waterville District Court claiming trespass and seeking a declaratory judgment that they owned the disputed property. They alleged that Dupuis's septic system was on their property, that Dupuis had removed or disturbed boundary markers, and that Dupuis had intentionally entered their property without consent, privilege, or the right to do so.

[¶ 11] On November 18, 2008, Dupuis filed a complaint against the Soucys in Kennebec County Superior Court claiming common law and statutory trespass and seeking a declaratory judgment that he owned the disputed property. Dupuis alleged that Ronald Soucy had intentionally and/or negligently entered Dupuis's land, removed a boundary marker, and cut down his trees.

■ [¶ 12] The cases were consolidated in the Superior Court.[5] After a two-

---

4. However, at trial Dupuis introduced Ronald Soucy's statement made in a deposition that his old garden was "[m]aybe scaled down a little bit" from his current garden, although it

was in the same location on the Soucy property.

5. We note with approval the action of the Superior Court in consolidating the District

day, jury-waived trial, the court entered judgment in favor of Dupuis and against Ronald and Danuta Soucy on all counts and determined that the boundary was the more northerly line, as depicted on the Wendell survey. The court also determined that, even if the Wendell survey were rejected, Dupuis proved by clear and convincing evidence that he had acquired the northern boundary by acquiescence.[6]

[¶ 13] The court found that the value of the cut trees was $4300. Section 7552(4)[7] allows the prevailing party to recover double damages for acts committed without fault or negligently and treble damages for acts committed intentionally or knowingly. The court ordered treble damages, $12,900, for the cut trees, and $2217.70 plus interest pursuant to section 7552(3)(C),[8] the cost of Wendell's services to reestablish the boundary marker.

[¶ 14] Dupuis filed an affidavit of attorney fees stating that he incurred fees of $21,327.21. The court awarded this full amount plus costs to Dupuis.

and Superior Court cases for trial management and trial.

6. To prove that a boundary line has been established by acquiescence, Dupuis had to show by clear and convincing evidence: (1) "possession up to a visible line marked clearly by monuments, fences or the like"; (2) "actual or constructive notice of the possession to the adjoining landowner"; (3) "conduct by the adjoining landowner from which recognition and acquiescence, not induced by fraud or mistake, may be fairly inferred"; and (4) "acquiescence for a long period of years, such that the policy behind the doctrine of acquiescence ... is well served by recognizing the boundary." *Hamlin v. Niedner*, 2008 ME 130, ¶ 7, 955 A.2d 251, 254.

7. The relevant statute provides:

**4. Damages recoverable.** Damages are recoverable as follows.

**A.** A person who negligently or without fault violates subsection 2 is liable to the

[¶ 15] The Soucys moved for findings of fact to clarify the court's order with regard to the following: the intentional or knowing cutting of trees; Ronald Soucy's acquiescence to the 1985 boundary line; Danuta Soucy's liability; the basis for accepting the Wendell survey; the basis for granting judgment against the Soucys on the common law trespass count; and the basis for finding that any actions the Soucys took were without permission of the owner. The court issued a brief order, concluding that its five-page decision included credibility determinations and findings and reasonable inferences based on record evidence, and that the parties had agreed that section 7552 replaced the common law. The Soucys filed a timely appeal.

## II. DISCUSSION

### A. Location of Boundary

[¶ 16] The Soucys challenge the court's decision accepting the Wendell survey and concluding that the boundary line

owner for 2 times the owner's damages as measured under subsection 3 or $250, whichever is greater.

**B.** A person who intentionally or knowingly violates subsection 2 is liable to the owner for 3 times the owner's damages as measured under subsection 3 or $500, whichever is greater.

. . . .

14 M.R.S. § 7552(4)(2009).

8. The relevant statute provides:

**3. Measure of damages.** This subsection governs the measurement of damages resulting from a violation of subsection 2.

. . . .

**C.** When a monument or marker has been disturbed, removed or destroyed as prohibited in subsection 2, paragraph C, the owner's damages may include the cost of engineering and surveyor services necessary to reestablish a monument or marker and its proper location.

14 M.R.S. § 7552(3)(C) (2009).

was the more northern line. We review the determination of the location of boundaries on the face of the earth as a question of fact, which we will only disturb if clearly erroneous. *McGrath v. Hills*, 662 A.2d 215, 218 (Me.1995).

[¶ 17] The Soucys argue that the court improperly relied on a 1974 survey of the disputed parcel by Francis Armstrong and on the Dupuis deed. However, the Armstrong survey was incorporated into the purchase and sale agreement between the original family and the Soucys, and the Soucy deed refers to the Armstrong survey. Further, the description of the Dupuis parcel in the Dupuis deed is the same as the description of the excepted property in the Soucy deed. The court's reliance on the Armstrong survey and the description in the Dupuis deed was not clearly erroneous.

[¶ 18] At trial, Wendell testified that he was able to survey a marshy area of the Dupuis property by walking it in the summer or fall. Ellis testified that he found it difficult to walk this area because of the wetlands. Further, Wendell was able to align his survey more closely with the Armstrong survey, whereas Ellis, who had more points of disagreement with that survey, concluded that the Armstrong survey was mistaken or incorrect on these issues. The court's determination to assign more weight to Wendell's testimony and survey than to Ellis's is an appropriate exercise of its ability to judge the credibility of witnesses. *See McGrath*, 662 A.2d at 218 ("The weight to be given to a surveyor's opinion is the prerogative of the factfinder.").

[¶ 19] The court also determined that the boundary was the more northern line based on the doctrine of boundary by acquiescence, having found the following: there were pins at the northeast and northwest corners of the Dupuis property;

Soucy knew in 1985 that Pelotte possessed the land and agreed to that line; there was no evidence of fraud or mistake; and Soucy acquiesced from 1985 until 2007 or 2008. *See Hamlin v. Niedner*, 2008 ME 130, ¶ 7, 955 A.2d 251, 254. Although Soucy disagreed about when the trees were planted and testified that Pelotte planted the trees around 1989 or 1990, he also stated that, at the time the trees were planted, he believed "honestly that possibly that they were" on the property now belonging to Dupuis. The court was entitled to judge Soucy's credibility. *See Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 12, 982 A.2d 339, 343 (The trial court, "as fact-finder and sole arbiter of witness credibility," may accept or reject portions of a witness' testimony.).

[¶ 20] Because the trial court had discretion to make determinations about witness credibility and the opinions of each surveyor, we affirm the determination that the Soucy–Dupuis boundary is the more northern line as indicated on the Wendell survey.

### B. Intentional or Knowing Tree Cutting

[¶ 21] The Soucys also challenge the court's finding that they acted intentionally or knowingly when cutting the trees, thereby entitling Dupuis to treble damages pursuant to section 7552(4)(B). "We review the court's factual finding that the act was intentional or knowing for clear error." *Shrader–Miller v. Miller*, 2004 ME 117, ¶ 17, 855 A.2d 1139, 1144.

[¶ 22] Because an earlier version of the statute allowed for treble damages when conduct was committed "willfully or knowingly," rather than "intentionally or knowingly," our case law includes determi-

nations based on different standards.[9] We have held that "intentionally" requires a greater degree of culpability than "willfully." *Id.* ¶ 18, 855 A.2d at 1144. An act is "knowingly" committed when the party is "subjectively aware that the cutting is improperly taking place on another's land." *Bonk v. McPherson,* 605 A.2d 74, 77 (Me. 1992). "Willful" conduct "must display utter and complete indifference to and disregard for the rights of others." *McGrath,* 662 A.2d at 219 ("continuing to remove gravel despite the existence of a dispute . . . [could] amount to utter disregard for and indifference to the [other landowner's] rights"); *see also Martin v. Brown,* 650 A.2d 937, 940 (Me.1994) ("An effort to deliberately expand a boundary," including cutting trees on adjoining land, "certainly can properly be found to be willful or knowing."). Thus, to obtain treble damages, Dupuis had to prove that Soucy was subjectively aware that his conduct was contrary to Dupuis's rights in the property, or that Soucy's conduct displayed more than an utter and complete indifference to and disregard for Dupuis's rights. *See Shrader–Miller,* 2004 ME 117, ¶ 18, 855 A.2d at 1144.

[¶ 23] The evidence in the record supports the court's finding that Ronald Soucy cut seven or eight trees on Dupuis's land, apologized, but then cut down another fifty-two trees and pulled a boundary pin. Although Soucy disputed the year when the trees were planted, even by his estimate, they would have been standing for at least fifteen years.[10] Soucy had not protested the location of the trees for at least fifteen years, and he knew or soon discovered that Dupuis was seeking a second surveyor's opinion when he pulled the pin. The determination that his conduct displayed more than a complete disregard for Dupuis's rights as a landowner was not clearly erroneous.

[¶ 24] The Soucys also argue that they could not have cut trees or removed the pin "without permission of the owner" pursuant to section 7552(2), because the true owner of the disputed parcel was not known. However, it is sufficient that the alleged trespasser knew about the existence of a dispute for an action in trespass to lie. *See Glidden v. Belden,* 684 A.2d 1306, 1319 (Me.1996). Multiple pieces of record evidence indicate that Soucy knew that Dupuis believed the trees were on his land.

[¶ 25] Soucy testified that Ellis assured him that the trees were on his property.[11] Even if we were willing to find that reliance on the opinion of one surveyor as to the location of a boundary line could justify trespass to a neighbor's land during a dispute, Ellis did not testify that he told Soucy that he was sure that the trees were on the Soucy property. On the contrary, Ellis testified that, at the time of the trial, his surveys were not complete, and the issue was "unresolved."

[¶ 26] We affirm the award of treble damages based on the finding that Soucy's conduct was intentional or knowing, because this finding is not clearly erroneous and is supported by competent record evidence.

9. *See* 14 M.R.S.A. § 7552 (Supp.1994). Section 7552 was amended by P.L.1995, ch. 450, § 2 (effective Sept. 29, 1995), and P.L.1995, ch. 585, §§ 2–4 (effective July 4, 1996).

10. The court found that the trees were twenty-two years old, based on Pelotte's testimony.

11. Soucy testified that he had the following conversation with Ellis prior to cutting the additional fifty-two trees and pulling the pin: "After I had the results of the survey, I asked Mr. Ellis, 'Are you sure?' He said, 'Yes.' I said, 'Are you absolutely sure?' And he said, 'Yes.' So, then I removed the trees."

## C. Danuta Soucy's Liability

[¶ 27] The Soucys challenge the judgment against Danuta Soucy on Dupuis's claim for trespass based on the cutting of trees pursuant to section 7552(2)(A), and the claim for trespass based on the removal of a boundary marker pursuant to section 7552(2)(C).[12] We will examine the evidence against Danuta Soucy to determine if there is sufficient evidence of conduct that would result in her personal liability. *See Bonk,* 605 A.2d at 78. The record is devoid of any evidence either linking Danuta Soucy to the actual cutting and boundary marker removal or suggesting that Danuta somehow directed or authorized Ronald to commit those acts. *See Martin,* 650 A.2d at 939; *Perkins v. Graves,* 642 A.2d 1349, 1351 (Me.1994). Dupuis conceded as much at oral argument. Accordingly, we vacate the judgment as it regards trespass claims made against Danuta Soucy.

## D. Award of Attorney Fees

[¶ 28] Finally, the Soucys argue that the award of attorney fees in the amount of $21,327.21 is precluded by section 7552(5), which limits attorney fees to one-half of the damages recovered pursuant to subsection (4) plus interest. Although the Soucys did not raise this issue in the trial court, because it is a purely legal issue, and "its resolution does not require the introduction of additional facts, its proper resolution is clear, and a failure to consider it may result in a miscarriage of justice," *Sebra v. Wentworth,* 2010 ME 21, ¶ 16, 990 A.2d 538, 544 (quotation marks omitted), we will consider whether the award of attorney fees in this case was excessive in light of section 7552(5). Pursuant to section 7552(5), the award of attorney fees in this case cannot have exceeded one-half of the damage award [13] pursuant to subsection (4) plus interest. We remand for a recalculation of attorney fees consistent with section 7552(5).

## III. CONCLUSION

[¶ 29] In summary, we hold that the court did not err in determining that the boundary line is the more northern line as indicated on the Wendell survey and in finding that Ronald Soucy acted intentionally or knowingly when he cut down the trees on the Dupuis property. However, the court erred in entering judgment against Danuta Soucy on Dupuis's trespass claim and in calculating the award of attorney fees.

The entry is:

Judgment against Danuta Soucy for trespass vacated. Award of attorney fees vacated and remanded for recalculation in accordance with section 7552(5) and this opinion. The remainder of the court's judgment and order is affirmed.

---

12. Although this argument was not raised in the trial court, we may review it, as an unpreserved issue, for obvious error, which requires "a seriously prejudicial error tending to produce a manifest injustice." *Tibbetts v. Dairyland Ins. Co.,* 2010 ME 61, ¶¶ 9–10, 999 A.2d 930, 933 (quotation marks omitted).

13. The total damage award to be used to calculate attorney fees on remand is $15,117.70.