2011 ME 51
### GUARDIANSHIP OF Justan A. SMITH.

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 24, 2011.

Decided: April 26, 2011.

J. Kimball Hobbs, Esq., Cooper & Bull, P.A., Westbrook, ME, for Robert Smith.

Arthur H. Dumas, Esq., Arthur H. Dumas, P.A., Sanford, ME, for Candy Batson.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1]   Robert E. Smith appeals from a judgment of the York County Probate Court (*Bailey, J.*) appointing Candy M. Batson and Robert's wife, Christine Smith, as co-guardians of Justan A. Smith.   Robert argues that the court erred by:  (1) failing to make sufficient findings of fact; (2) admitting the testimony and reports of a guardian ad litem appointed for Justan in a separate District Court proceeding; and (3) ordering him to deposit a portion of Justan's monthly Social Security Income (SSI) benefits into a separate bank account.   We vacate the portion of the judgment dealing with Justan's SSI benefits, and otherwise affirm.

## I.  BACKGROUND

[¶ 2]   Robert and Candy are the parents of Justan, who was born with a developmental disability on August 23, 1988. For much of his life, Justan has been caught in the middle of an ongoing and bitter feud between his parents, which we do not recount in detail here.   It is sufficient for present purposes to observe that the conflict between Robert and Candy has been marked by contentious and protracted litigation;  mutual hostility and disrespect;  and an exceedingly uncooperative co-parenting relationship.    Justan has been negatively affected by his parents' conduct.

[¶ 3]   In April 2009, Candy filed a petition for appointment of a guardian and

conservator in the Probate Court,[1] *see* 18–A M.R.S. § 5–303 (2010), after which the court entered an interim order appointing Robert and Candy as Justan's temporary co-guardians. To effectuate its award of shared custody, the court set forth a visitation schedule dividing Justan's time between Robert and Candy.

[¶ 4] In June 2009, Robert intentionally prevented the occurrence of three of Candy's scheduled visits with Justan. Although Robert claimed to be concerned for Justan's safety, he continued to withhold Justan from visits after the dismissal of a temporary protection from abuse order initially entered against Candy. In response to Robert's actions, Candy filed a motion for contempt.

[¶ 5] In December 2009 and April 2010, the court held hearings on the guardianship petition and Candy's motion for contempt. Over Robert's objection, the court admitted the testimony and guardian ad litem reports of Lee Corbin, who had once served as a guardian ad litem (GAL) for Justan in a separate District Court action.[2] On June 1, 2010, the court entered a judgment appointing Candy and Christine as Justan's co-guardians, and Christine as Justan's sole conservator. The court found Robert in contempt for violating the court-ordered visitation schedule, and awarded Candy "make-up time" with Justan to account for the missed visits. Finally, as part of the judgment, the court ordered that "[a]t least $200.00 per month from Justan's [SSI benefits] shall be deposited into a bank account which shall require 3 signatures (Justan, Christine and Candy) to withdraw from."

[¶ 6] Following entry of the judgment, Robert filed a motion for findings of fact and conclusions of law, *see* M.R. Prob. P. 52; M.R. Civ. P. 52, asking the court to make "findings on all significant contested issues," and requesting specific findings on the issue of contempt. The court granted the motion in part, issuing an amended judgment with only minor changes. Robert filed this appeal.

## II. DISCUSSION

[¶ 7] Contrary to Robert's contentions, the court's findings are sufficient to support the judgment. *See Jarvis v. Jarvis*, 2003 ME 53, ¶ 18, 832 A.2d 775, 779 ("Where, as here, a request for findings is made pursuant to M.R. Civ. P. 52(a) . . . we review the original findings and any additional findings made in response to the motion for findings to determine if they are sufficient, as a matter of law, to support the result and if they are supported by the evidence in the record."). Although conflicting evidence was presented regarding the parenting deficiencies of both Robert and Candy, the court found that it was in Justan's best interest to maintain a relationship with each parent. *See* 18–A M.R.S. § 5–311(b) (2010). Because Robert and Candy could not function as co-guardians, the court appropriately chose to appoint Robert's wife, Christine, with whom Candy had recently enjoyed "limited cooperation and communication," to serve as a co-guardian with Candy. *See Estate of Bragdon*, 2005 ME 85, ¶¶ 8–11, 875 A.2d 697, 700. Likewise, the court's findings support the judgment of contempt. *See White v. Nason*, 2005 ME 73, ¶ 7, 874 A.2d 891, 893–94. Although Robert offered evi-

1. Candy filed a similar petition in 2006 that was ultimately dismissed for failure to prosecute. Robert filed his own guardianship petition in response to Candy's April 2009 petition.

2. A different guardian ad litem was appointed specifically for this case pursuant to 18–A M.R.S. §§ 1–112, 5–303(c) (2010), and his reports were admitted without objection.

dence in defense and mitigation, *see* M.R. Civ. P. 66(d)(2)(D), the court was not bound to accept it, *see Dupuis v. Soucy*, 2011 ME 2, ¶ 19, 11 A.3d 318, 323, and competent evidence supports the court's finding that Robert's actions were taken "in an attempt to control Justan's life, even to his detriment."

[¶ 8] Nor are we persuaded by Robert's argument that the court committed reversible error when it admitted Lee Corbin's testimony and guardian ad litem reports. According to Robert, this evidence was not statutorily admissible pursuant to the Probate Code because the Probate Court had not appointed Corbin to serve as a GAL pursuant to 18–A M.R.S. §§ 1–112, 5–303(c) (2010).[3] However, even if we assume that some of this evidence was improperly admitted based on the Maine Rules of Evidence, the abundance of other evidence supporting the court's guardianship appointment renders any such error harmless. *See* M.R. Prob. P. 61; M.R. Civ. P. 61; *see also In re Elijah R.*, 620 A.2d 282, 285 (Me.1993) (holding that the admission of hearsay evidence was harmless error because it was "highly probable that admission of the evidence did not affect the judgment").

[¶ 9] We must, however, vacate the portion of the judgment ordering Robert to deposit $200 of Justan's monthly SSI benefits into a bank account subject to the joint control of Candy, Christine, and Justan. Robert argues that the court's order conflicts with federal law governing the obligations of "representative payees."[4] *See* 42 U.S.C.S. § 405(j) (LexisNexis 2010); 20 C.F.R. §§ 416.601–416.665 (2010). We agree.

[¶ 10] "[I]t is through operation of the supremacy clause of the United States Constitution that federal law preempts conflicting state law." *Robards v. Cotton Mill Assocs.*, 677 A.2d 540, 543 (Me.1996) (quotation marks omitted). In determining whether federal law preempts state law, we apply the following test:

> Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law, when there is an outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Verizon New Eng., Inc. v. Pub. Utils. Comm'n*, 2005 ME 64, ¶ 21, 875 A.2d 118,

---

**3.** Title 18–A M.R.S. § 5–303(c) (2010) states that the "guardian ad litem shall submit a report in writing to the court." Pursuant to 18–A M.R.S. § 1–112(e) (2010), that report "is admissible as evidence and subject to cross-examination and rebuttal, whether or not objected to by a party."

**4.** Robert also contends that the court's order violates 42 U.S.C.S. § 407(a) (LexisNexis 2010), commonly referred to as the Social Security Act's "antiattachment" provision, *see Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 379, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003), which states:

> The right of any person to any future payment under this title shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

Because the court's order conflicts with federal law concerning "representative payees," we do not reach this issue.

123 (quotation marks omitted); *see also Me. Yankee Atomic Power Co. v. Me. Pub. Utils. Comm'n,* 581 A.2d 799, 803 (Me. 1990) (" 'Federal regulations have no less pre-emptive effect than federal statutes.' " (quoting *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982))). Federal preemption, which involves issues of statutory and constitutional interpretation, is a question of law reviewed de novo. *See Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1153 (9th Cir.2009); *McGee v. Sec'y of State,* 2006 ME 50, ¶ 5, 896 A.2d 933, 936.

[¶ 11] The SSI program, which is administered by the Social Security Administration (SSA), provides federal assistance to low-income individuals who are elderly, blind, or disabled. *See* 42 U.S.C.S. §§ 1381–1385 (LexisNexis 2010). Although SSI benefits are, in some cases, paid directly to the beneficiary, payments can be made to a duly certified fiduciary— called a "representative payee"—for the beneficiary's "use and benefit" if the Commissioner of the SSA "determines that the interest of [the beneficiary] . . . would be served thereby." 42 U.S.C.S. § 405(j), (j)(1)(A); *see also* 20 C.F.R. § 416.610 ("When payment will be made to a representative payee."). According to the record, Robert currently serves as Justan's representative payee.

[¶ 12] Representative payees are subject to detailed regulations governing the use of SSI benefits. *See, e.g.,* 20 C.F.R. §§ 416.635 ("What are the responsibilities of your representative payee?"), 416.640 ("Use of benefit payments."), 416.645

("Conservation and investment of benefit payments."). Payees must abide by "a system of accountability monitoring" under which they are forbidden from "misus[ing]" an individual's benefit payments in any way.[5] 42 U.S.C.S. § 405(j)(3)(A), (j)(7)(A). Payees are also required to report to the SSA at least once per year "with respect to the use of such payments." 42 U.S.C.S. § 405(j)(3)(A); *see also* 20 C.F.R. §§ 416.625 ("What information must a representative payee report to us?"); 416.665 ("How does your representative payee account for the use of benefits?").

[¶ 13] The court's order here—requiring Robert to deposit a portion of Justan's monthly SSI benefits into a bank account subject to the joint control of Candy, Christine, and Justan—conflicts with these federal statutes and regulations. Federal law specifically requires the representative payee to use the benefits of the beneficiary "in a manner and for the purposes *he or she determines* . . . to be in [the beneficiary's] best interests." 20 C.F.R. § 416.635(a) (emphasis added). As Justan's representative payee, it is Robert— not Candy, Christine, and Justan—who is vested with the discretionary authority to determine how the SSI benefits should be spent on Justan's behalf. Moreover, while representative payees are subject to multiple regulations created to prevent misuse or abuse of funds, and are "responsible for paying back misused benefits," 20 C.F.R. § 416.641(a), the Probate Court's order contains no direction regarding the manner in which Candy, Christine, and Justan may collectively use the deposited funds.[6]

---

5. A representative payee who misuses Social Security payments may also be subject to criminal sanctions pursuant 42 U.S.C.S. § 408(a)(5) (LexisNexis 2010).

6. We note that the court made no finding that Robert misused Justan's SSI benefits. Other

jurisdictions have reached conflicting opinions regarding whether state courts have concurrent subject matter jurisdiction to consider whether a representative payee has misused an individual's SSI benefits. *Compare Grace Thru Faith v. Caldwell,* 944 S.W.2d 607, 613

[¶ 14]   Given the nature of the court's guardianship appointment, the parties may wish to seek SSA review of the situation and have a new representative payee appointed.  *See* 42 U.S.C.S. § 405(j)(2); 20 C.F.R.   §§ 416.620,   416.621,   416.624, 416.650.  In these circumstances, however, the court erred in interfering with the current representative payee's discretionary authority to use the SSI benefits in the beneficiary's best interest.

■   [¶ 15]   Although "[t]he exercise of federal supremacy should not be presumed lightly," *Robards,* 677 A.2d at 543 (quotation marks omitted), when "no other conclusion is possible given the nature of the regulated subject matter, or Congress has clearly ordained this result, federal law must preempt conflicting state law," *Me. Yankee Atomic Power Co.,* 581 A.2d at 803.  Such is the case here.  Accordingly, we vacate the portion of the judgment pertaining to Justan's SSI benefits.

The entry is:

Judgment vacated in part.  Remanded to the District Court for further proceedings consistent with this opinion.  In all other respects, the judgment is affirmed.

(Tenn.Ct.App.1996) ("[I]f a representative payee misuses or misappropriates SSI benefits ... Tennessee courts have jurisdiction to examine the payee's accounting, determine if any abuse has occurred, and order the appropriate remedy."), *with Brevard v. Brevard,* 74 N.C.App. 484, 328 S.E.2d 789, 792 (1985)

("The courts of North Carolina, however, do not possess the power ... to determine that defendant is misusing Social Security benefits paid to him on behalf of the children and to direct that he account for them to some other person.").